# No. 23-672

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

**CARIBE BILLIE, QUINCY REEVES,** *individually and on behalf of all other similarly situated individuals,*

Plaintiffs - Appellees,

v.

**COVERALL NORTH AMERICA, INC.,**

Defendant - Appellant.

On Appeal from the United States District Court
For the District of Connecticut
Case No. 3:19-00092-JCH
The Honorable Janet C. Hall

## BRIEF AND SPECIAL APPENDIX OF DEFENDANT-APPELLANT
## COVERALL NORTH AMERICA, INC.

Norman M. Leon, Esq.
**DLA PIPER LLP (US)**
444 West Lake Street,
Suite 900
Chicago, Illinois 60606-0089
Tel. (312) 368-4000
norman.leon@us.dlapiper.com

Matthew J. Iverson, Esq.
**NELSON MULLINS RILEY &
SCARBOROUGH LLP**
One Financial Center, Suite 3500
Boston, MA 02111
(617) 217-4700
matthew.iverson@nelsonmullins.com

*Attorneys for Defendant-Appellant*

## **CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 26.1, Coverall North America, Inc. states that it is wholly owned by CNA Holding Corporation, which is organized under the laws of Delaware and wholly owned by CNA Acquisition LLC, which is also organized under the laws of Delaware. CNA Acquisition LLC is wholly owned by Coverall Acquisition LLC of Delaware. Coverall Acquisition LLC is wholly owned by WCP Coverall Intermediate LLC, also organized in Delaware. WCP Coverall Holdings LLC, organized in Delaware, wholly owns WCP Coverall Intermediate LLC. WCP Coverall Holdings LLC is wholly owned by WCP Coverall TopCo LLC, which is organized in Delaware. WCP Coverall TopCo LLC has no parent corporation. No publicly held corporation owns more than 10% of the common stock in any of the above listed business entities.

# **TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT ........................................ I

JURISDICTIONAL ISSUES ................................................................. 1

STATEMENT OF THE ISSUES ........................................................... 1

INTRODUCTION ................................................................................. 2

STATEMENT OF THE CASE .............................................................. 4

SUMMARY OF ARGUMENT .............................................................. 8

STANDARD OF REVIEW .................................................................. 13

ARGUMENT ....................................................................................... 14

I.    THE DISTRICT COURT LACKED JURISDICTION
BECAUSE THERE IS NO ARTICLE III CASE OR
CONTROVERSY. ...................................................................... 14

    A.    Billie Is No Longer Injured Because He Has Been Paid ...... 15

    B.    In The Context Of Equitable Arbitration Awards, The
Better-Reasoned Cases Hold That An Undisputed Award
Does Not Present An Article III Controversy ...................... 17

    C.    *TransUnion* Rejected The Logic Of The Other Equitable
Award Cases, Which, In Any Case, Does Not Apply To
Monetary Awards Like This One ......................................... 19

    D.    *Zeiler* Is Inapposite Because It Did Not Address Article III
Standing. ............................................................................... 22

    E.    The Arbitrator Did Not Award Any "Declaratory Relief," And
Even If He Had, There Would Still Not Be A Controversy .. 25

II.    There Is No Statutory Jurisdiction ............................................. 28

    A.    The District Court Erroneously Held That Billie Had A
Right To $9,250 Attorneys' Fees If He Prevailed. ............... 29

    B.    The Arbitrator Did Not Award Billie $12,000 Worth Of
"Declaratory Relief." ........................................................... 33

III.    Regardless Of Whether Jurisdiction Exists, This Court
Should Reverse The District Court's Decision To Unseal The
Arbitration Documents. ............................................................. 35

A.  The Context—How Courts Assess The Presumption Of Access To Judicial Filings. .................................................. 37

B.  The Error—The Arbitration Documents Were Irrelevant To The Confirmation Process. ................................................ 39

    1.  The FAA <u>Requires</u> District Courts To Confirm Uncontested Arbitration Awards. ................................ 40

    2.  The Award Was Uncontested. ..................................... 41

    3.  The District Court Erroneously Relied On *D.H. Blair* When It Decided It Had To Review The Award. ......... 42

C.  The Arbitration Documents Are Either Not Judicial Documents, Or They Are Subject To A Minimal Presumption Of Public Access. .................................................. 46

D.  The Right To Arbitral Confidentiality Outweighs Whatever Presumption Of Access Applies To The Award. ................... 51

CONCLUSION ....................................................................... 57

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Awuah v. Coverall N. Am., Inc.*,
  707 F. Supp. 2d 80 (D. Mass. 2010) ....................................................... 4

*Badgerow v. Walters*,
  142 S. Ct. 1310 (2022) ........................................................ 8, 28, 29, 34

*Barkley v. Pizza Hut of Am., Inc.*,
  No. 614CV376ORL37DAB, 2015 WL 5915817 (M.D. Fla.
  Oct. 8, 2015) ....................................................................................... 55

*Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*,
  814 F.3d 132 (2d Cir. 2016) ........................................................ 38, 46

*Brown & Pipkins, LLC v. Serv. Emps. Int'l Union*,
  846 F.3d 716 (4th Cir. 2017) ............................................................... 19

*Brown v. Maxwell*,
  929 F.3d 41 (2d Cir. 2019) ........................................................... 13, 46

*Carter v. HealthPort Techs., LLC*,
  822 F.3d 47 (2d Cir. 2016) ................................................................. 35

*Chicago Regional Council of Carpenters v. Onsite Woodwork Corp.*,
  No. 11 C 8365, 2012 WL 6189635 (N.D. Ill. Dec. 12, 2012) .............. 18

*Citigroup, Inc. v. Abu Dhabi Inv. Auth.*,
  No. 13 Civ. 6073 (PKC), 2013 WL 6171315 (S.D.N.Y. Nov.
  25, 2013), <u>aff'd</u>, 776 F.3d 126 (2d Cir. 2015) ..................................... 50

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ........................................................................... 27

*Connecticut Citizens Def. League, Inc. v. Lamont*,
  6 F.4th 439 (2d Cir. 2021) ........................................................... 13, 15

iv

*Connecticut Light & Power Co. v. Loc. 420, Int'l Bhd. of Elec. Workers, AFL-CIO,*
   718 F.2d 14 (2d Cir. 1983) ................................................................... 27

*Coverall North America, Inc. v. Commissioner of the Div. of Unemployment Assistance,*
   447 Mass. 852, 857 N.E.2d 1083 (2006) ......................................... 4, 5

*D.H. Blair & Co. v. Gottdiener,*
   462 F.3d 95 (2d Cir. 2006) ................................................ 42, 43, 44, 45

*Derwin v. Gen. Dynamics Corp.,*
   719 F.2d 484 (1st Cir. 1983) ....................................................... *passim*

*Derwin, Puerto Rico Tel. Co., Inc. v. WorldNet Telecommunications, LCC,*
   2022 WL 255362 (D.P.R. Jan. 27, 2022) .................................... *passim*

*Fed. Election C'mm'n v. Cruz,*
   142 S. Ct. 1638 (2022) ........................................................................ 14

*Fireman's Fund Ins. Co. v. Cunningham Lindsey Claims Mgmt., Inc.,*
   No. 03CV0531(DLI)(MLO), 2005 WL 1522783 (E.D.N.Y. June 28, 2005) ............................................................................ *passim*

*Gambale v. Deutsche Bank AG,*
   377 F.3d 133 (2d Cir. 2004) .................................................. 51, 54, 55

*Green v. Dep't of Educ. of City of New York,*
   16 F.4th 1070 (2d Cir. 2021) .............................................................. 23

*Guyden v. Aetna, Inc.,*
   544 F.3d 376 (2d Cir. 2008) ...................................................... *passim*

*Hall Street Associates, L. L. C. v. Mattel, Inc.,*
   552 U.S. 576 (2008) .................................................................... *passim*

*Home Depot U. S. A., Inc. v. Jackson,*
   139 S. Ct. 1743 (2019) .......................................................................... 8

v

*Humphrey v. Syracuse Police Dep't*,
758 Fed. App'x 205 (2d Cir. 2019) ...................................................... 35

*In re IBM Arb. Agreement Litig.*,
No. 21-CV-6296 (JMF), 2022 WL 3043220 (S.D.N.Y. Aug.
2, 2022) ................................................................................................ 49

*International Union, United Mine Workers of Am. v. Consol
Energy Inc.*,
No. 1:20-CV-01475 (CJN), 2022 WL 2643531 (D.D.C. July
8, 2022) .......................................................................................... 17, 18

*Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*,
341 F.3d 987 (9th Cir. 2003) ............................................................... 45

*Lugosch v. Pyramid Co. of Onondaga*,
435 F.3d 110 (2d Cir. 2006) ........................................... 37, 38, 39, 51

*Makarova v. United States*,
201 F.3d 110 (2d Cir. 2000) ............................................................... 33

*Malkin v. Shasha as co-Tr. of Violet Shuker Shasha Tr.*,
No. 21-2675, 2023 WL 3012381 (2d Cir. Apr. 20, 2023) ................... 29

*Matrix Serv., Inc. v. Int'l Union of Operating Eng'rs, Loc.
150*,
No. 05 CV 3618, 2005 WL 8179249 (N.D. Ill. Nov. 22,
2005) .................................................................................................... 40

*Moore v. Betit*,
511 F.2d 1004 (2d Cir. 1975) ............................................................. 33

*Mujo v. Jani-King Int'l, Inc.*,
13 F.4th 204 (2d Cir. 2021) ................................................................ 53

*New York Tel. Co. v. Commc'ns Workers of Am. Loc. 1100,
AFL-CIO Dist. One*,
256 F.3d 89 (2d Cir. 2001) ................................................................. 53

*Newsday LLC v. Cnty. of Nassau*,
730 F.3d 156 (2d Cir. 2013) ............................................................... 38

*Original Appalachian Artworks, Inc. v. Jakks Pac., Inc.*,
    No. 1:14-CV-02861-ELR, 2017 WL 5476798 (N.D. Ga.
    Mar. 6), *aff'd*, 718 F. App'x 776 (11th Cir. 2017) ........................ 55, 56

*Palmieri v. Allstate Ins. Co.*,
    445 F.3d 179 (2d Cir. 2006) .............................................................. 13

*Red Lion Hotels Franchising, Inc. v. Century-Omaha Land,*
    *LLC.*,
    No. 2:18-CV-0131-TOR, 2019 WL 3577670 (E.D. Wash.
    Aug. 6, 2019) ................................................................................... 40

*Reineri v. Int'l Bus. Machines Corp.*,
    No. 21CV8654LAKBCM, 2022 WL 2316622 (S.D.N.Y.
    June 28, 2022) .................................................................................. 35

*Richardson v. Coverall N. Am., Inc.*,
    811 F. App'x 100 (3d Cir. 2020), *cert. denied,* 141 S. Ct.
    1685 (2021) ......................................................................................... 4

*Rivas v. Coverall N. Am., Inc.*,
    842 F. App'x 55 (9th Cir. 2021), *vacated by Coverall N.*
    *Am., Inc. v. Rivas*, 142 S. Ct. 2859 (2022) ........................................ 4

*Sheet Metal Workers Int'l Ass'n Loc. 66 v. Northshore*
    *Exteriors, Inc.*,
    No. C19-1261JLR, 2020 WL 978504 (W.D. Wash. Feb. 28,
    2020) .................................................................................. 18, 19, 24

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) .......................................................................... 15

*Stafford v. International Business Machines Corp.*,
    Case No. 22-1240 ....................................................................... 16, 22

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) ................................................................. 9, 23, 32

*Teamsters Loc. 177 v. United Parcel Serv.*,
    966 F.3d 245 (3d Cir. 2020) ............................................. 9, 19, 20, 24

*In re Teligent, Inc.*,
  640 F.3d 53 (2d Cir. 2011) .......................................................... 54, 57

*Those Certain Underwriters at Lloyds, London v. Occidental
  Gems, Inc.*,
  41 A.D.3d 362, 841 N.Y.S.2d 225 (2007), *aff'd*, 11 N.Y.3d
  843, 901 N.E.2d 732 (2008)................................................................. 52

*Town of Stratford v. Int'l Ass'n of Firefighters, AFL-CIO,
  Loc. 998*,
  728 A.2d 1063 (Conn. 1999)............................................................... 27

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021).............................................................. *passim*

*Trump v. New York*,
  141 S. Ct. 530 (2020)........................................................................ 14

*Turban v. Bar Giacosa Corp.*,
  No. 19-CV-1138 (JMF), 2019 WL 3495947 (S.D.N.Y. Aug.
  1, 2019)........................................................................................ 33, 34

*Unite Here Loc. 1 v. Hyatt Corp.*,
  862 F.3d 8 (7th Cir. 2017)...................................................... 18, 19, 24

*United States v. HSBC Bank USA, N.A.*,
  863 F.3d 125 (2d Cir. 2017) .......................................... 46, 47, 48, 49

*United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*,
  363 U.S. 574 (1960).......................................................................... 51

*Univ. of Chicago Med. Ctr. v. Nat'l Nurses United*,
  No. 17 C 2005, 2018 WL 461231 (N.D. Ill. Jan. 18, 2018) ................ 17

*Van Erkis & Co. v. Solo Worldwide Enter.*,
  No. 98 CIV. 1385 (DLC), 2000 WL 423523 (S.D.N.Y. Apr.
  18, 2000)........................................................................................... 41

*W. Coast Life Ins. Co. v. Swiss Re Life & Health Am. Inc.*,
  No. 21 CV 5317 (VB), 2021 U.S. Dist. LEXIS 120043
  (S.D.N.Y. June 28, 2021) .................................................................. 50

*Westinghouse Elevators of Puerto Rico, Inc. v. S.I.U. de
      Puerto Rico,*
      583 F.2d 1184 (1st Cir. 1978) ............................................................ 27

*Zeiler v. Deitsch*,
      500 F.3d 157 (2d Cir. 2007) ................................................. 9, 22, 23, 24

**Statutes**

28 U.S.C. § 1291 ......................................................................................... 1

28 U.S.C. § 1332(a) ....................................................................... 8, 11, 28, 32

Conn. Gen. Stat. § 37-3a ........................................................................... 6

9 U.S.C. § 9 ...................................................................................... *passim*

9 U.S.C § 10 ..................................................................................... *passim*

9 U.S.C § 11 ...................................................................... 40, 41, 42, 45

**Other Authorities**

https://www.merriam-webster.com/dictionary/enforce............................ 30

Local Rule 28.1 ....................................................................................... 4

United States Constitution Article III........................................... *passim*

## JURISDICTIONAL ISSUES[1]

This is an appeal of a final decision (the "Decision," SPA. 1-18) of Judge Janet C. Hall (the "District Court") to both confirm an arbitration award pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9, and unseal two confidential documents (collectively, the "Arbitration Documents") filed with Appellant Caribe Billie's[2] confirmation motion: the Arbitrator's Final Award (the "Award," JA448-449), and the Arbitrator's Order on Claimant's Motion for Partial Summary Judgment (the "Summary Judgment Order," JA435-447). Although this Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, the District Court lacked jurisdiction under both Article III of the United States Constitution and applicable statutes. *See infra* at 14-35.

## STATEMENT OF THE ISSUES

1.  Whether Billie's request to confirm a satisfied arbitration award presents a justiciable Article III case or controversy.

---

[1] This Brief references pages in the attached Special Appendix as "SPA. ___." It references pages in the Joint Appendix as "JA___." One volume of the Joint Appendix, containing the documents filed in the District Court under seal, has been submitted to the Court under seal.

[2] The case caption misspells Billie's name as "Bille." This Brief uses the correct spelling.

1

2.     Whether the District Court had diversity jurisdiction to confirm the $56,164 Award based on the combination of its face value, attorneys' fees Billie supposedly expended to "enforce" the Award, and the value the District Court placed on the declaratory relief the Award supposedly provided, where: (a) Billie did not incur any fees "enforcing" the Award, and (b) the Arbitrator stated his Award provided only monetary relief.

3.     Whether the District Court correctly ruled that the confidential Arbitration Documents should be made public, even though they had no bearing on the Award's confirmation, which (assuming the District Court had jurisdiction) was mandatory under the FAA.

## **INTRODUCTION**

This is a dispute over an arbitration award that everyone agrees has been fully satisfied.  In *Derwin v. Gen. Dynamics Corp.*, 719 F.2d 484 (1st Cir. 1983), the First Circuit Court of Appeals ordered the dismissal of an action to confirm an arbitration award that, like this one, "[b]oth parties profess to agree is … binding."  *Id*. at 492.  Holding that "Article III's prudential values and concerns of judicial economy strongly counsel against the entry of a confirmatory order," the First Circuit found it "hard

to fathom what the present debate over confirmation portends" beyond "merely giv[ing] the parties something more to argue about." *Id.* at 492. This appeal illustrates the First Circuit's point.

What, you may ask, could the parties to a fully satisfied arbitration award still be arguing about? The answer is confidentiality. When Billie moved to confirm the Award, his confirmation motion attached not only the Award itself, but also the arbitrator's separate Summary Judgment Order, which resolved liability but did not award any relief. Billie acknowledged he had a contractual obligation to seal both Arbitration Documents, but his sealing motion made plain that what he really wanted the District Court to do was <u>deny</u> his motion to seal and make the Arbitration Documents public.

And why, you may ask, does Billie care whether the Arbitration Documents are public? The answer is that he does not. Billie, who was fully paid and is not involved in any other litigation or arbitration with CNA, has no dog in this fight. But his attorneys do. Although the confirmation motion stated Billie wanted the Arbitration Documents unsealed "so that the public may access [them]," JA308, a footnote to that motion makes the true motive for unsealing the Arbitration Documents

clear. The footnote lists four cases in which "individuals have brought misclassification claims against [CNA] … alleging that the company has systematically misclassifying [sic] its workers." *Id*. But the footnote neglects to mention that, except for the 17-year-old decision in *Coverall North America, Inc. v. Commissioner of the Div. of Unemployment Assistance*, 447 Mass. 852, 857 N.E.2d 1083 (2006), Billie's counsel represented the plaintiffs in all those cases.[3] In short, Billie's attorneys have a side business suing CNA, and publicizing the Arbitration Documents will help that business.

## STATEMENT OF THE CASE[4]

This case arises out of a franchise agreement (the "Franchise Agreement") between Billie and a company, R&B Services, Inc., dba Coverall of Connecticut & Westchester ("R&B") that allowed Billie to operate a commercial janitorial franchise using CNA's marks.

---

[3] *See Rivas v. Coverall N. Am., Inc.*, 842 F. App'x 55 (9th Cir. 2021), *vacated by Coverall N. Am., Inc. v. Rivas*, 142 S. Ct. 2859 (2022); *Richardson v. Coverall N. Am., Inc.*, 811 F. App'x 100 (3d Cir. 2020), *cert. denied,* 141 S. Ct. 1685 (2021); *Awuah v. Coverall N. Am., Inc.*, 707 F. Supp. 2d 80 (D. Mass. 2010).

[4] For purposes of Local Rule 28.1, CNA incorporates its description in the preceding Jurisdictional Issues section of this Brief.

4

JA315-317.  R&B, which the Franchise Agreement refers to as "Coverall,"

JA315, is not a party to this action.

After preliminary skirmishes in the District Court resulting in an

order compelling arbitration, on May 22, 2022, an arbitrator issued the

$56,164 Award in favor of Billie and against CNA.  JA448, JA355.

The Award stated the following:

> Consequently, although Claimant's motion is designated as
> one for partial summary judgment, nevertheless, the parties
> agreed that the only issue remaining for trial following the
> undersigned's Ruling on January 26, 2022, was the amount of
> damages.  Accordingly, the undersigned adopts the amount of
> $56,164 as total damages in this arbitration.  In view of the
> undersigned's Ruling and Supplemental Memorandum, the
> undersigned awards in favor of the Claimant, and **any claims
> not expressly granted are hereby, denied.**

JA395, emphasis added.

It also stated:

> This Award is in **full settlement** of all claims and
> counterclaims submitted to this Arbitration.  **All claims not
> expressly granted herein are hereby, denied.**

*Id.*, emphasis added.

On June 7, 2022, Billie filed two motions.  One motion sought to

confirm the Award pursuant to Section 9 of the FAA.  JA307 ("This

Motion addresses only Mr. Billie and the wholly separate, ministerial

issue of confirming an arbitration award.").  It also attached sealed copies

of both the Award, which assessed damages, and the Summary Judgment Order, which found in favor of Billie on the question of liability. JA435. The other motion, though labelled a "Motion to Seal," made clear that it really sought to <u>unseal</u> both Arbitration Documents, even though Billie acknowledged he had a contractual obligation to keep them confidential. *See* JA301 (acknowledging confidentiality obligation), JA302 ("Plaintiffs are filings [sic] Exhibits 1 and 2 to their Motion to Confirm Arbitration Award under seal, but … request that the Court order the [sic] be unsealed.").

On July 27, 2022—before it even responded to the motion to confirm—CNA sent a check in payment of the Award to Billie's counsel in the amount of $57,100.06. JA352. This payment represented the face value of the Award (which included actual damages, interest, and attorneys' fees) as well as the maximum allowable post-judgment interest pursuant to Conn. Gen. Stat. § 37-3a. JA355. Billie's counsel neither returned CNA's check nor suggested it was inadequate.

CNA did "not dispute the enforceability of the Arbitration Award or contend that it should be vacated, modified, or corrected." Decision at 13. Instead, it challenged jurisdiction, arguing that "the amount in

controversy is insufficient for diversity jurisdiction and that there is no live controversy because the defendant has already paid the Arbitration Award." *Id.* at 6-7. CNA also argued that the Arbitration Documents were not judicial documents and, even if they were, the "public's strong interest in arbitral confidentiality, in combination with the defendant's privacy interests, outweighs the limited public interest in access to an arbitration award that has already been paid." Decision at 14 (internal quotes and brackets omitted).

On March 30, 2023, seven months after CNA paid the Award, the District Court held it had subject matter jurisdiction over Billie's Motions, confirmed the Award, and ordered that the Arbitration Documents be unsealed. Decision at 18. CNA filed an Emergency Motion to Stay the Decision pending appeal, which the District Court allowed, and then filed a timely notice of appeal. JA 426-434

## SUMMARY OF ARGUMENT

It is axiomatic that a federal district court cannot exercise jurisdiction over a case unless it has both a constitutional and a statutory basis for jurisdiction. *See, e.g., Home Depot U. S. A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746 (2019). "Article III, § 2, of the Constitution delineates the character of the controversies over which federal judicial authority may extend," *id*. (internal quotes and brackets omitted), and, relevant to this case,[5] 28 U.S.C. § 1332(a) requires as a prerequisite to jurisdiction an amount in controversy exceeding $75,000.

This case does not satisfy either jurisdictional requirement. Part I of this Brief explains why no Article III case or controversy exists – in short, where both parties agree that an arbitration award is both enforceable and satisfied, there is no controversy for a federal court to resolve. [Pages 14-19]. Although some courts, including the Third Circuit Court of Appeals, have held that a justiciable controversy over a

---

[5] There is no federal question in this case. Although this case involves arbitration pursuant to the FAA, the FAA's "authorization of a petition [to confirm an arbitration award] does not itself create jurisdiction. Rather, the federal court must have what we have called an 'independent jurisdictional basis' to resolve the matter." *Badgerow v. Walters*, 142 S. Ct. 1310, 1314 (2022) (quoting *Hall Street Associates, L. L. C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008)).

satisfied award exists because the FAA creates a statutory right to confirm it, *see Teamsters Loc. 177 v. United Parcel Serv.*, 966 F.3d 245, 251 (3d Cir. 2020), those holdings have been invalidated by the Supreme Court's decision in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), which rejected the proposition that Article III's injury-in-fact requirement can be satisfied by the frustration of a statutory right. *Id.* at 2205. [Pages 19-22].

The District Court held that it had Article III jurisdiction to confirm the Award because (1) *Zeiler v. Deitsch,* 500 F.3d 157 (2d Cir. 2007), holds that district courts have jurisdiction to confirm undisputed arbitration awards, and (2) "declaratory relief in the arbitrator's decision suggest[s] that the dispute is not moot…." Decision at 13. Both holdings are wrong.

First, as Part I(D) of this Brief explains [Pages 22-25], *Zeiler* did not address whether an Article III case or controversy existed in that case, and therefore has "no precedential effect" with respect to Article III jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998). Moreover, *Zeiler* did not involve a satisfied monetary award. It involved a dispute over orders by an arbitration panel for a variety of accountings. *See Zeiler,* 500 F.3d at 168. Finally, to the extent *Zeiler* stands for the

9

proposition that federal courts have jurisdiction to confirm arbitration awards absent any actual dispute over compliance, that language has been overruled by *TransUnion's* holding that "[o]nly those plaintiffs who have been *concretely harmed* … may sue … in federal court." *TransUnion LLC*, 141 S. Ct. at 2205 (emphasis in original).

Second, as Part I(E) explains [Pages 25-29], the record belies the District Court's finding that the arbitrator granted Billie "declaratory relief." Decision at 9-10. The arbitrator could not have been clearer that his decision awarded monetary damages and nothing else. JA395 ("[T]he undersigned adopts the amount of $56,164 as total damages in this arbitration … and any claims not expressly granted are hereby, denied[.]"). Although the District Court held that the Summary Judgment Order's liability determination "entitled Billie … to the benefits attendant to being an employee going forward," Decision at 10, it cites no legal authority for this proposition, and it is black letter law that a monetary arbitration award does not afford any form of prospective relief. If Billie wants to demand damages for conduct occurring after the Award—when the operative facts may be different than those that gave rise to the Award itself—he must initiate a new arbitration. In any case,

even if the arbitrator had ordered declaratory relief, there is currently no dispute over it, and it is settled that hypothetical disputes do not satisfy Article III's case and controversy requirement.

Part II of this Brief [Pages 29-35] explains why statutory jurisdiction does not exist either. The District Court aggregated three amounts to satisfy 28 U.S.C. § 1332(a)'s $75,000 amount in controversy requirement: the Award's $57,100.06 value, $9,250 in attorney's fees, and $12,000 worth of "declaratory relief." Decision at 12. The last two additions were based on nothing. With respect to the former, Billie had no right to attorney's fees, and, if he did, he incurred almost all of them fighting about confidentiality and jurisdiction, neither of which count for amount in controversy purposes. With respect to the latter, as discussed above Billie did not receive any "declaratory relief," and, in any case, his valuation of that relief was conclusory at best.

Finally, Part III of this Brief [Pages 35-57] discusses why, regardless of whether jurisdiction exists, this Court should reverse the District Court's decision to unseal the Arbitration Documents. If the District Court lacked jurisdiction over Billie's confirmation motion, then it also lacked jurisdiction to unseal the Arbitration Documents that

11

accompanied that motion. If, on the other hand, the District Court had jurisdiction, then its unsealing analysis rests on a legal error.

The District Court unsealed the Arbitration Documents because it believed it had to determine whether the Award was correct—even though no one asked for this determination. In the District Court's view, this *sua sponte* review transformed the Arbitration Documents into judicial documents. *See* Decision at 4-5, 13. The District Court was wrong. The FAA <u>requires</u> district courts to confirm arbitration awards when parties seek confirmation and no one seeks to vacate, modify, or correct them. As no one sought to vacate, modify, or correct the Award in this case, the District Court had no choice but to confirm it, regardless of what the Arbitration Documents contained. Accordingly, the Arbitration Documents were either not judicial documents at all, or, if they were, the presumption of public access that attached to them was so weak that any confidentiality rationale would suffice to overcome it.

And the confidentiality rationale at issue here is significant. But "confidentiality is a paradigmatic aspect of arbitration," that encourages parties to resolve disputes privately. *Guyden v. Aetna, Inc.*, 544 F.3d 376, 385 (2d Cir. 2008). If private arbitration parties can publicly file

confidential arbitration decisions merely by attaching them to requests to confirm already-satisfied awards, then arbitral confidentiality is worthless. The Decision—which creates a mechanism to make <u>any</u> arbitration award public—is therefore "far out of step with [this Court's] current strong endorsement of the federal statutes favoring this method of resolving disputes.'" *Id.* (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 30 (1991) (internal quotes and alterations omitted)).

## STANDARD OF REVIEW

Questions of subject matter jurisdiction, including questions of mootness, are subject to de novo review. *See, e.g.*, *Connecticut Citizens Def. League, Inc. v. Lamont*, 6 F.4th 439, 444 (2d Cir. 2021); *Palmieri v. Allstate Ins. Co.*, 445 F.3d 179, 184 (2d Cir. 2006). "When reviewing a district court's decision to seal a filing or maintain such a seal," this Court "examine[s] the court's factual findings for clear error, its legal determinations de novo, and its ultimate decision to seal or unseal for abuse of discretion." *Brown v. Maxwell*, 929 F.3d 41, 47 (2d Cir. 2019) (quoting *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 139 (2d Cir. 2016)).

## ARGUMENT

## I. THE DISTRICT COURT LACKED JURISDICTION BECAUSE THERE IS NO ARTICLE III CASE OR CONTROVERSY.

It is undisputed that CNA paid the Award prior to Confirmation, and Billie has not suggested that any compliance issue remains. Decision at 12; JA352. Because there was no case or controversy left to resolve once payment was made, this Court should reverse the Decision and remand the matter to the District Court with instructions to dismiss it for lack of subject matter jurisdiction.

"[U]nder Article III, a federal court may resolve only 'a real controversy with real impact on real persons.'" *TransUnion LLC*, 141 S. Ct. at 2203 (quoting *American Legion v. American Humanist Assn.*, 139 S.Ct. 2067, 2103 (2019)). To establish Article III standing, a "plaintiff must show (1) an injury in fact, (2) fairly traceable to the challenged conduct of the defendant, (3) that is likely to be redressed by the requested relief." *Fed. Election C'mm'n v. Cruz*, 142 S. Ct. 1638, 1646 (2022).

Article III standing is not a sporadic requirement. Rather, Article III standing "must exist not only at the time the complaint is filed, but through all stages of the litigation." *Trump v. New York*, 141 S. Ct. 530,

14

534 (2020) (quoting *Already, LLC v. Nike, Inc.,* 568 U.S. 85, 90–91 (2013)). Accordingly, "[i]f, as a result of changed circumstances, a case that presented an actual redressable injury at the time it was filed ceases to involve such an injury, it ceases to fall within a federal court's Article III subject matter jurisdiction and must be dismissed for mootness." *Connecticut Citizens Def. League, Inc. v. Lamont*, 6 F.4th 439, 444 (2d Cir. 2021) (quoting *Janakievski v. Exec. Dir., Rochester Psychiatric Ctr.*, 955 F.3d 314, 319 (2d Cir. 2020)).

### A. Billie Is No Longer Injured Because He Has Been Paid.

"To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (internal quotes omitted). Moreover, "[a] 'concrete' injury … must actually exist." *Id.* at 340.

There is no concrete injury here—and there was none at the time the District Court issued its ruling—because the Award had been fully satisfied (i.e., Billie had been paid in full) seven months before the District Court chose to unseal the Award. In *Derwin v. Gen. Dynamics Corp.*, 719 F.2d 484 (1st Cir. 1983), the First Circuit Court of Appeals

ordered the dismissal of an action to confirm an arbitration award that
"[b]oth parties profess to agree is … binding," holding that "[u]nder the
circumstances, Article III's prudential values and concerns of judicial
economy strongly counsel against the entry of a confirmatory order." *Id.*
at 492-93. Although it did not specifically invoke the mootness doctrine,
the First Circuit made clear that its decision rested on the absence of a
redressable injury, noting that "it is hard to fathom what the present
debate over confirmation portends" beyond "merely giv[ing] the parties
something more to argue about." *Id.* at 492.

In accord with *Derwin*, *Puerto Rico Tel. Co., Inc. v. WorldNet
Telecommunications, LCC*, 2022 WL 255362 (D.P.R. Jan. 27, 2022)
addressed a confirmation action with facts in line with this case. There,
as here, the final award (1) "ordered [the respondent] to pay a specific
sum of money … and denied all other claims and requests for relief," (2)
"[t]he parties agree[d] [respondent] has paid the full amount awarded,"
and (3) the parties "agree[d] that the Final Award is final and binding."
*Id.* at *1. On these facts, Judge Arias-Marxuach held he lacked Article
III jurisdiction because "[n]o actual injury exists…." *Id.* at *2. As far as
CNA is aware, aside from the pending appeal in *Stafford v. International*

16

*Business Machines Corp.*, Case No. 22-1240 ("*Stafford v. IBM*"), *Puerto Rico Tel. Co.* is the only decision addressing Article III jurisdiction in the context of a request to confirm a satisfied monetary arbitration award.

### B. In The Context Of Equitable Arbitration Awards, The Better-Reasoned Cases Hold That An Undisputed Award Does Not Present An Article III Controversy.

As Judge Arias-Marxuach pointed out in *Puerto Rico Tel. Co.*, the facts in that case (and this one) "stand in contrast to the body of caselaw involving confirmation of arbitration awards for equitable relief, in which the justiciability issue is admittedly more nuanced than the case at bar." *Id.* One set of cases addressing requests to confirm equitable arbitration awards holds that federal courts lack Article III jurisdiction if "no live case or controversy exists" regarding compliance with the award. *International Union, United Mine Workers of Am. v. Consol Energy Inc.*, No. 1:20-CV-01475 (CJN), 2022 WL 2643531, at *3 (D.D.C. July 8, 2022); *see also id.* at *4 (collecting cases). Most of these cases, like *Derwin* and *International Union*, dismiss for lack of jurisdiction because no active controversy exists. *See Derwin,* 719 F.2d at 492-93; *International Union,* 2022 WL 2643531, at *4; *Univ. of Chicago Med. Ctr. v. Nat'l Nurses United,* No. 17 C 2005, 2018 WL 461231, at *4 (N.D. Ill. Jan. 18, 2018)

("Most courts that have considered these claims have found them to be either moot or unripe for adjudication."); *Chicago Regional Council of Carpenters v. Onsite Woodwork Corp.*, No. 11 C 8365, 2012 WL 6189635, at *4 (N.D. Ill. Dec. 12, 2012) (same, collecting cases).

A second but consistent set of cases, like *Unite Here Loc. 1 v. Hyatt Corp.*, 862 F.3d 8 (7th Cir. 2017), refuse to dismiss for lack of jurisdiction because a dispute over compliance <u>does</u> exist. *See id.* at 598-99 ("The 41 pending alleged violations … demonstrate … that the parties remain at odds…. That is sufficient to distinguish this case from others in which courts have dismissed a request to confirm an arbitration award for want of a live and actual dispute between the parties.") (internal quotes omitted); *Sheet Metal Workers Int'l Ass'n Loc. 66 v. Northshore Exteriors, Inc.*, No. C19-1261JLR, 2020 WL 978504, at *3 (W.D. Wash. Feb. 28, 2020) ("Plaintiffs claim that Northshore is not in compliance with the Directive and ask the court to order Northshore to comply…. Thus, this case presents specific allegations of an ongoing dispute over an arbitration award that the parties failed to present in *Derwin*.").

The logic behind both sets of cases demonstrates why Article III jurisdiction does not exist here. As in *Derwin* and *International Union*,

and unlike in *Unite Here Loc. 1* and *Metal Workers Int'l Ass'n Loc. 66*, there is no dispute in this case whether CNA complied with the Award. *See* JA352-353. And as in *Puerto Rico Tel. Co.*, CNA "has fully complied with its obligations under the Final Award. The arbitrator required [CNA] to pay [Billie] a certain sum of money and [CNA] obeyed." *Id.*, 2022 WL 255362 at *2. *Cf. Brown & Pipkins, LLC v. Serv. Emps. Int'l Union*, 846 F.3d 716, 729 (4th Cir. 2017) (finding Article III jurisdiction over monetary award existed where payment was in dispute).

### C. *TransUnion* Rejected The Logic Of The Other Equitable Award Cases, Which, In Any Case, Does Not Apply To Monetary Awards Like This One.

There is a third subset of cases addressing Article III jurisdiction over equitable awards which hold that jurisdiction over confirmation requests always exists because "[u]nder the FAA a party's injuries are only fully remedied by the entry of a confirmation order." *Teamsters Loc. 177*, 966 F.3d at 251. Courts (like the Third Circuit) that adhere to this theory "view confirmation as a statutory right created by the FAA" so that "[a] party to arbitration suffers an injury when he is denied the right to obtain confirmation...." *Id.* at 253 n.3.

As an initial matter, the Third Circuit implicitly recognized that *Teamsters Loc. 177*'s logic does not apply in a case, like this one, involving a satisfied <u>monetary</u> award. *See id.* at 253 n.3 ("We limit our holding to an award for equitable relief and express no opinion as to whether a party that receives an arbitration award for money damages has standing to confirm the award in federal court after those damages are paid in full."). Reduced to its core, the rationale behind the Third Circuit's holding in *Teamsters Loc. 177* was that confirmation makes an equitable award easier to enforce in the event of a future dispute. As the Third Circuit explained:

> Without a confirmation order, the parties would essentially have to relitigate the case via a suit to enforce the arbitration award. But where there is such an order, and one of [sic] parties violates it, the court applies the analysis as when one of its orders is defied—it can penalize the non-complying party through contempt proceedings or the issuance of injunctive relief.

*Teamsters Loc. 177*, 966 F.3d at 253. In this case, however, there can be no future dispute—Billie has been fully paid and his controversy with CNA is over.[6] JA352-353, JA355.

---

[6] Even if some potential future dispute were possible in this case, for Article III jurisdiction purposes "the mere risk of future harm, standing alone, cannot qualify as a concrete harm—at least unless the exposure to

In addition, *Teamsters Loc. 177*'s logic cannot survive *TransUnion's* negation of statutory rights as a basis for Article III standing. *TransUnion* explicitly "rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *TransUnion LLC*, 141 S. Ct. at 2205 (quoting *Spokeo, Inc. v. Robins*, 578 U. S. 330, 340 (2016)). As the Supreme Court went on to explain, "under Article III, an injury in law is not an injury in fact. Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id.* (emphasis in original). Accordingly, a party no longer suffering a concrete harm because its arbitration award has been paid, like Billie, does not have an injury-in-fact merely because the FAA provides a statutory right to confirm an award. As *Puerto Rico Tel. Co.* explains, although "the FAA clearly states that a court 'must grant' a timely request for [confirmation of] an arbitration award," that language "does not supersede the 'irreducible

---

the risk of future harm itself causes a separate concrete harm" like an emotional injury. *TransUnion LLC*, 141 S. Ct. at 2210–11.

constitutional minimum of [an Article III case or controversy].'" *Id.*, 2022 WL 255362 at *2.

### D. *Zeiler* Is Inapposite Because It Did Not Address Article III Standing.

Except for the still pending appeal in *Stafford v. IBM*, this Court has not considered whether a federal district court has Article III jurisdiction to confirm a satisfied arbitration award. The closest it came was in *Zeiler*, which (in pertinent part) addressed the confirmation of orders by an arbitration panel for a variety of accountings. *See Zeiler*, 500 F.3d at 168. Although one party (Deitsch) argued it was unnecessary to confirm some of these awards because they had been satisfied, the other party (Zeiler) disputed compliance and argued "that in any event prior compliance is not a ground for refusal of confirmation." *Id.* at 169. This Court sided with Zeiler, holding that

> Deitsch has failed to show why prior compliance should serve as a ground for refusal to confirm an arbitration award. Confirmation under the Convention is a summary proceeding in nature, which is not intended to involve complex factual determinations, other than a determination of the limited statutory conditions for confirmation or grounds for refusal to confirm. A district court confirming an arbitration award does little more than give the award the force of a court order. At the confirmation stage, the court is not required to consider the subsequent question of compliance.

*Id.* (internal citations omitted).

Zeiler did not argue that the district court lacked Article III jurisdiction to confirm the disputed awards,[7] and this Court did not address Article III jurisdiction in its decision. *See id.* at 168-70. *Zeiler*, therefore, does not control the jurisdictional question at issue here. As this Court has explained, "a sub silentio holding is not binding precedent." *Green v. Dep't of Educ. of City of New York*, 16 F.4th 1070, 1076 n.1 (2d Cir. 2021) (quoting *Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton*, 841 F.3d 133, 153 (2d Cir. 2016)). That is particularly true in the jurisdictional context, because the Supreme Court holds that decisions like *Zeiler*, in which Article III jurisdiction is "assumed by the parties[] and was assumed without discussion by the Court," are "drive-by jurisdictional rulings" with "no precedential effect." *Steel Co.*, 523 U.S. at 91. *See also Green*, 16 F.4th at 1076 n.1 (same, quoting *Steel Co.*).

Moreover, even if *Zeiler* had precedential value in the context of Article III standing, it would still be inapposite. *Zeiler* did not involve "a 'regular' arbitration, in which the arbitrators would hear all the evidence

---

[7] Zeiler argued that the district court lacked jurisdiction to confirm the awards under the FAA because they were not final. *See Brief for Appellants*, *Zeiler v. Deitsch*, 2006 WL 5155278 (C.A.2) at **32-41.

23

and eventually reach a conclusive resolution of the entire case. Rather, the arbitrators were asked to preside over the continuing process of sorting out the details of a commercial relationship, entering operative decisions along the way." *Zeiler*, 500 F.3d at 169. Put another way, *Zeiler*, like *Unite Here Loc. 1* and *Sheet Metal Workers Int'l*, was a compliance dispute over an equitable arbitration award (or, to be precise in *Zeiler's* case, a series of equitable awards). *Compare Zeiler*, 500 F.3d at 168-69 (dispute over compliance with accounting orders) *with Unite Here Loc. 1*, 862 F.3d at 593 (compliance dispute over cease-and-desist order) and *Metal Workers Int'l Ass'n Loc. 66*, 2020 WL 978504, at *3 (compliance dispute over work assignment directive). That is not this case, and *Zeiler* says nothing about whether federal courts have jurisdiction to confirm a satisfied <u>monetary</u> award.

Finally, to the extent this Court intended *Zeiler's* comment that "at the confirmation stage, the court is not required to consider the subsequent question of compliance," *Zeiler* at 169, to suggest that a federal court can confirm an arbitration award even though the party seeking confirmation has not been harmed, that holding, like the holding of *Teamsters Loc. 177*, cannot survive *TransUnion. See TransUnion LLC*,

24

141 S. Ct. at 2205 ("Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court.") (emphasis in original).

### E. The Arbitrator Did Not Award Any "Declaratory Relief," And Even If He Had, There Would Still Not Be A Controversy.

The District Court believed that it retained Article III jurisdiction over Billie's confirmation request because the "future ramifications of the declaratory relief in the arbitrator's decision suggest that the dispute is not moot." Decision at 13. This statement is baffling because the arbitrator did not award declaratory relief. To the contrary, the arbitrator explicitly stated—twice—that his Award was for monetary damages and nothing else. JA395.[8]

---

[8] The Award states that:

> Accordingly, the undersigned adopts the amount of $56,164 as total damages in this arbitration. In view of the undersigned's Ruling and Supplemental Memorandum, the undersigned awards in favor of the Claimant, and **any claims not expressly granted are hereby, denied.**

and

> This Award is in **full settlement** of all claims and counterclaims submitted to this Arbitration. **All claims not expressly granted herein are hereby, denied.**

JA395 (emphasis added).

The District Court tried to get around the arbitrator's description of his own Award by claiming that the Summary Judgment Order (which addresses liability) "not only entitled Billie to damages for the unlawful deductions taken in the past—as delineated in the Award—but also to the benefits attendant to being an employee going forward." Decision at 10. But this ignores the fact that the Summary Judgment Order is entirely retrospective, addressing Billie's claims "from the year 2013 to present." JA435.

But even if the Summary Judgment Order's scope was not expressly limited to past conduct, it would <u>still</u> not provide the prospective relief the District Court read into it, because arbitration decisions have no binding effect on future disputes. As the First Circuit has explained:

> Unless the Parties agree otherwise in their contract, an arbitrator's award rendered in a prior arbitration proceeding even between the same parties does not stop either party from raising the same issue in a subsequent arbitration; nor does it bar the arbitrator from determining the same or a similar issue anew. The arbitrator may consider prior awards between the same parties or between other parties if offered in the proceeding before him, but he is not bound to follow them.

*Westinghouse Elevators of Puerto Rico, Inc. v. S.I.U. de Puerto Rico*, 583 F.2d 1184, 1187 (1st Cir. 1978); *see also Connecticut Light & Power Co. v. Loc. 420, Int'l Bhd. of Elec. Workers, AFL-CIO*, 718 F.2d 14, 20 (2d Cir. 1983) (citing *Westinghouse Elevators of Puerto Rico*, "[p]rinciples of stare decisis and res judicata do not have the same doctrinal force in arbitration proceedings as they do in judicial proceedings"); *Town of Stratford v. Int'l Ass'n of Firefighters, AFL-CIO, Loc. 998*, 728 A.2d 1063, 1070 (Conn. 1999) ("The overwhelming majority of federal jurisdictions that have considered this issue have held that arbitrators are not bound by the decisions of prior arbitrators.") (collecting cases).

To provide Billie with "the benefits attendant to being an employee going forward," Decision at 10, the Award would have had to provide either declaratory relief or enter a prospective equitable order binding CNA. This Award does neither (and rightly so, as the facts on which it was based may have changed the day after it entered).

Finally, even if the Award did contain some sort of prospective relief, Billie would still lack Article III standing because there is no impending dispute about that relief. It is settled law that "[t]o establish Article III standing, an injury must be … actual or imminent…." *Clapper*

*v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal quotes omitted). "Although imminence is concededly a somewhat elastic concept," the Supreme Court has "repeatedly reiterated" that a "threatened injury must be *certainly impending*" to confer Article III standing, and "allegations of *possible* future injury are not sufficient." *Id*. (emphasis in original, internal quotations and brackets omitted). There is no "certainly impending" future injury here. *Id*. To the contrary, Billie continues "to enjoy the benefits of the Award…." JA431. Billie does not, therefore, have standing under Article III, and this Court should reverse the Decision and remand this case to the District Court with an order that it be dismissed.

## II. THERE IS NO STATUTORY JURISDICTION.

Although the FAA authorizes arbitration parties to confirm awards in federal court, "[t]he Act's authorization of a petition does not itself create jurisdiction. Rather, the federal court must have [. . .] an 'independent jurisdictional basis' to resolve the matter." *Badgerow*, 142 S. Ct. at 1314. Here, as there is no federal question, Billie had to satisfy 28 U.S.C. § 1332(a)'s $75,000 amount in controversy requirement to

invoke the court's jurisdiction.[9]  To hoist Billie over that bar, the District Court added two amounts to the Award's $57,100.06 value: $9,250 in attorney's fees and $12,000 worth of "declaratory relief."  Decision at 12. Both additions must be valid for jurisdiction to exist.  Neither is.

### A. The District Court Erroneously Held That Billie Had A Right To $9,250 Attorneys' Fees If He Prevailed.

As the District Court admitted, in this Circuit "[a]ttorney's fees may be used to satisfy the amount in controversy only if they are recoverable as a matter of right pursuant to statute or contract."  Decision at 9-10 (quoting *Kimm v. KCC Trading, Inc.*, 449 F. App'x 85, 85–86 (2d Cir. 2012)).  That is not the case here.  To provide Billie with a right to

---

[9] Prior to *Badgerow*, "courts in this Circuit could 'look through' petitions under FAA §§ 9 and 10, 'applying the ordinary principles of … jurisdiction to the underlying dispute' at issue in the arbitration."  *Malkin v. Shasha as co-Tr. of Violet Shuker Shasha Tr.*, No. 21-2675, 2023 WL 3012381, at *1 (2d Cir. Apr. 20, 2023).  No more:

> *Badgerow* provides that for petitions brought under Sections 9 and 10, courts are precluded from relying on the 'look through' approach to determine jurisdiction.  142 S. Ct. at 1314.  Rather, *Badgerow* directs courts to determine jurisdiction from 'the face of the application itself.' *Id.* at 1316; *see also id.* at 1314 ('[A] court may look only to the application actually submitted to it in assessing its jurisdiction.').

*Id.*

attorneys' fees, the District Court relied on the following language from

Paragraph 21(c) of the Franchise Agreement:

> Should either Party incur attorney's fees in order to enforce the terms and conditions of this Agreement, including post-term covenants, the prevailing party shall be entitled to reimbursement by the other party of all litigation costs, including attorney's fees.

JA332. *See also* Decision at 9 (quoting provision).

The District Court held this language entitled Billie to a fee award

because:

> …one of the terms and conditions of the arbitration agreement is that "[t]he decision of the arbitrator shall be conclusive and binding upon all the parties, and judgment upon the award may be entered in any court of competent jurisdiction."

Decision at 9 (quoting JA331]).

There are two errors with this holding.  First, Billie did not have to

"enforce" anything.  To "enforce" means to compel,[10] and Billie did not

compel CNA to do anything.  CNA paid the award 66 days after it issued

and did "not dispute the enforceability of the Arbitration Award or

contend that it should be vacated, modified, or corrected." Decision at 13.

---

[10] *See* https://www.merriam-webster.com/dictionary/enforce.  Retrieved Jul. 25, 2023 (copy attached at SPA. 19).

In any case, the arbitration agreement language the District Court said Billie enforced—i.e., "judgment upon the award may be entered in any court of competent jurisdiction," *id.*—is just a venue provision specifying the courts where parties to the arbitration can seek confirmation pursuant to 9 U.S.C § 9. *See id.* ("If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award … and shall specify the court, then … any party to the arbitration may apply to the court so specified for an order confirming the award…."). Billie certainly did not have to compel CNA to let him file in the District Court.

Second, even if Billie was enforcing something when he filed his confirmation application, he did not incur $9,250 in attorneys' fees doing it. The affidavit Billie's attorneys submitted to support his $9,250 claim states that his attorneys earned those fees (1) "drafting and revising the Motion to Confirm Arbitration Award and the associated Motion to Seal," (2) "drafting and revising the Reply in support of the Motion to Confirm the arbitration award and Opposition to Defendant's Cross-Motion to Dismiss and this Declaration," and (3) on "research in conjunction with the Motion and Reply." JA377. However, a review of the papers listed above reveals that only two paragraphs from Billie's initial motion

concern his request to confirm the Award. *Compare* JA306-307 *with* JA301-303, JA306-311, JA359-376].[11]   The balance of those papers address the District Court's jurisdiction and Billie's request to unseal the Arbitration Documents.

Neither topic counts for amount in controversy purposes.   The confidentiality argument has nothing to do with "enforc[ing] the terms and conditions" of the Franchise Agreement.  Decision at 9.  If anything, it seeks to breach one.  *See* JA 301 (acknowledging contractual obligation to keep Arbitration Documents confidential).   And using the fees Billie generated arguing about jurisdiction to satisfy § 1332(a)'s amount in controversy requirement is pure bootstrapping—if litigants can satisfy the amount in controversy simply by generating $75,000 in fees arguing about jurisdiction, then 28 U.S.C. § 1332(a)'s monetary requirement is pointless.  *See, e.g., Steel Co.*, 523 U.S. at 107 ("[A] plaintiff cannot achieve standing to litigate a substantive issue by bringing suit for the cost of bringing suit. The litigation must give the plaintiff some other

---

[11] Those two paragraphs are nearly identical to the first two paragraphs of the motion to compel Billie's counsel originally filed in *Stafford v. Int'l Bus. Machines Corp.*, No. 21-CV-6164 (JPO), Dkt. No. 14.

benefit besides reimbursement of costs that are a byproduct of the litigation itself.").

Nothing in the record discloses what portion of the $9,250 in attorneys' fees Billie says he incurred to pay for the two recycled paragraphs his attorneys dedicated to confirming his Award. As Billie bears the burden of proving facts sufficient to support jurisdiction, *see, e.g., Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000), his attempt to rest jurisdiction on attorneys' fees must fail.

## B.   The Arbitrator Did Not Award Billie $12,000 Worth Of "Declaratory Relief."

The error underlying the addition of some value for declaratory relief is even more patent because the Award did not provide Billie with <u>any</u> declaratory relief. *See supra* Part I(e). But even if it had, Billie did not provide a "realistic formula" for valuing it. *Moore v. Betit*, 511 F.2d 1004, 1006 (2d Cir. 1975).

Although the formula for valuing declaratory relief for jurisdictional purposes need not be "exacting," it cannot be "conclusory." *Turban v. Bar Giacosa Corp.*, No. 19-CV-1138 (JMF), 2019 WL 3495947, at *2 (S.D.N.Y. Aug. 1, 2019) (quoting *Wood v. Maguire Auto., LLC*, 508 F. App'x 65, 65 (2d Cir. 2013) (summary order)). Billie argued he was

33

entitled to jurisdictional credit for "deductions taken from [his] monthly pay for insurance and for franchise fees and finder's fees." JA380. The sum-total of Billie's attorney's "formula" for valuing these items was:

> The value of all of these savings and benefits going forward is substantial as Mr. Billie still has one cleaning account with Coverall, and the value of those benefits likely exceeds $12,000.

*Id*. This is the very definition of a conclusory assertion.

In the end, the District Court could only exercise diversity jurisdiction if Billie was entitled to jurisdictional credit for both $9,250 in attorneys' fees and $12,000 worth of declaratory relief. As he is entitled to neither, this Court should reverse the Decision and remand with instructions that the District Court dismiss.[12]

---

[12] As the Supreme Court explained in *Badgerow*, disputes over arbitration awards worth less than $75,000 belong in state court. *See Badgerow*, 142 S. Ct. at 1321–22 ("Congress chose to place fewer arbitration disputes in federal court than Walters wishes. The statutory plan, as suggested above, makes Section 9 and 10 applications conform to the normal—and sensible—judicial division of labor: The applications go to state, rather than federal, courts when they raise claims between non-diverse parties involving state law.").

## III. REGARDLESS OF WHETHER JURISDICTION EXISTS, THIS COURT SHOULD REVERSE THE DISTRICT COURT'S DECISION TO UNSEAL THE ARBITRATION DOCUMENTS.

Billie filed two motions with the District Court—one seeking to confirm the Award (JA306), and another seeking to unseal the Arbitration Documents attached to Billie's confirmation motion, (JA302). As the District Court lacked jurisdiction over the confirmation motion, it had no power to consider the merits of Billie's accompanying request to unseal its attachments. *See Humphrey v. Syracuse Police Dep't*, 758 Fed. App'x 205, 206 (2d Cir. 2019) ("Lacking subject matter jurisdiction, the district court did not have the power to reach the merits[.]"); *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 54-55 (2d Cir. 2016) ("[W]ithout jurisdiction, the district court lacks the power to adjudicate the merits of the case[.]"); *Reineri v. Int'l Bus. Machines Corp.*, No. 21CV8654LAKBCM, 2022 WL 2316622, at *5 (S.D.N.Y. June 28, 2022) ("[P]etitioner's motion asks this Court both to confirm the Award and to unseal it. Because jurisdiction remains unresolved, the Court cannot consider the merits of that motion.").

Even if that were not so, this Court should still reverse the District Court's decision to unseal the Arbitration Documents, because that

decision rests on a legal error. The District Court's rationale for unsealing the Arbitration Documents was this:

1.    Even though the Award was uncontested, the District Court still had to review both it and the Summary Judgment Order for error. Decision at 4-5, 13.

2.    Because the District Court had to review the Arbitration Documents, both were judicial documents subject to a strong presumption of public access. Decision at 15.

3.    CNA and the public's interest in a confidential arbitration process did not outweigh this presumption. Decision at 17-18.

The District Court's primary legal error occurred in step 1. Where, as here, a party seeks to confirm an arbitration award and no one seeks to vacate, modify, or correct that award, a district court need not to review the award's contents. That review would be pointless, because the FAA requires district courts to confirm uncontested awards, regardless of what they say.

With that error corrected, the District Court's logic unravels. No presumption of public access, strong or otherwise, attaches to a filing that is irrelevant to a court's decision making. Such filings are either not judicial documents at all, or the presumption that attaches to them is so weak that any confidentiality rationale suffices to overcome it.

36

The confidentiality rationales at issue here are more than sufficient to overcome whatever presumption attaches to the Arbitration Documents. If parties to private arbitrations can publicly file confidential arbitration decisions merely by attaching them to requests to confirm satisfied awards, then arbitral confidentiality agreements are worthless. That would be irreconcilable with this Court's recognition of the fact that "confidentiality is a paradigmatic aspect of arbitration," *Guyden*, 544 F.3d at 385, and that arbitral confidentiality both encourages parties to resolve their disputes privately and discourages parties from prolonging their disputes in public legal challenges. The Decision—which creates a means to make <u>any</u> arbitration award public—undermines that important public policy objective.

### A. The Context—How Courts Assess The Presumption Of Access To Judicial Filings.

Under this Court's precedent, a district court performs a sequential analysis to resolve a request to seal (or unseal) a filing. First, the court determines whether the filing is a "judicial document" to which a presumption of public access attaches. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006). "A 'judicial document' or 'judicial record' is a filed item that is 'relevant to the performance of the

37

judicial function and useful in the judicial process.'" *Bernstein*, 814 F.3d at 139 (quoting *Lugosch,* 435 F.3d at 119). This does not mean that a filing is a judicial document simply because it "is relevant to the subject matter of a judicial proceeding, or that the proceeding was in some way stimulated by the document…." *Newsday LLC v. Cnty. of Nassau*, 730 F.3d 156, 167 n.15 (2d Cir. 2013). After all, "[p]arties are entitled to litigate issues that divide them, if they can fairly do so, without thereby exposing to public view confidential materials." *Id*.

To qualify as a judicial document, a filing must be "utilized in judicial proceedings and form part of the basis of judicial decision-making…." *Id*. For example, complaints and summary judgment materials are judicial documents, while discovery motions and documents used to refresh witness recollection are not. *See Bernstein*, 814 F.3d at 140 (recognizing complaints are judicial documents because they are "the cornerstone of every case," while "discovery motions and accompanying exhibits" are not); *Lugosch*, 435 F.3d at 120–21 (finding documents submitted for consideration on summary judgment are judicial documents); *Newsday LLC v. Cnty. Of Nassau*, 730 F.3d at 167 (acknowledging report used to refresh recollection not judicial document).

If a filing is a judicial document, then a presumption of public access attaches and the district court must determine "the weight of that presumption," and "balance competing considerations against it." *Lugosch*, 435 F.3d at 119-120 (quoting *United States v. Amodeo,* 71 F.3d 1044, 1050 (2d Cir. 1995)). The presumption's weight depends on the filing's impact on the district court's decision making—filings fall on a "continuum" extending from documents "used to determine litigants' substantive legal rights" (for which the presumption is strong) to documents that "play only a negligible role in the performance of Article III duties," for which "the presumption … amounts to little more than a prediction of public access absent a countervailing reason." *Lugosch*, 435 F.3d at 121 (quoting *Amodeo*, 71 F.3d at 1050).

## B. The Error—The Arbitration Documents Were Irrelevant To The Confirmation Process.

The District Court held that the Arbitration Documents were judicial documents because "the petition, memoranda, and other supporting documents filed in connection with a petition to confirm an arbitration award (including the Final Award itself) … directly affect the Court's adjudication of that petition." Decision at 14 (quoting *Union Square Ltd. v. Mr. Bar-B-Q Prod. LLC*, No. 21-CV-11032 (VSB), 2022 WL

39

252080, at *4 (S.D.N.Y. Jan. 27, 2022)); *see also id.* at 13 (reviewing Arbitration Documents). But they did not. Although a district court can review an arbitration award when a party asks to vacate, modify, or correct it, when an award is uncontested a district court <u>must</u> confirm it, regardless of what it says.

### 1. The FAA <u>Requires</u> District Courts To Confirm Uncontested Arbitration Awards.

Sections 10 and 11 of the FAA permit district courts to vacate, modify, or correct awards only "upon the application of any party to the arbitration…." 9 U.S.C. §§ 10-11. These provisions "provide the FAA's **exclusive** grounds for expedited vacatur and modification." *Hall St. Assocs.*, 552 U.S. at 584 (emphasis added); *see also Red Lion Hotels Franchising, Inc. v. Century-Omaha Land, LLC.*, No. 2:18-CV-0131-TOR, 2019 WL 3577670, at *2 (E.D. Wash. Aug. 6, 2019) ("The plain language of the statute demonstrates that an award may be modified or corrected *only* 'upon the application of any party to the arbitration.'") (quoting 9 U.S.C. §§ 10-11, emphasis in original); *Matrix Serv., Inc. v. Int'l Union of Operating Eng'rs, Loc. 150*, No. 05 CV 3618, 2005 WL 8179249, at *1 (N.D. Ill. Nov. 22, 2005) ("[C]ourts may vacate arbitration awards only 'upon the application of any party to the arbitration.'") (quoting 9 U.S.C.

§ 10(a)); *Van Erkis & Co. v. Solo Worldwide Enter.*, No. 98 CIV. 1385 (DLC), 2000 WL 423523, at *3 (S.D.N.Y. Apr. 18, 2000) ("Sections 10 and 11 of the FAA authorize a court to vacate, modify or correct an arbitration award only upon the application of a party."). Accordingly, when a party moves to confirm an arbitration award, and no other party askes to vacate, modify, or correct that award, the FAA requires that the district court grant the motion. *See Hall St. Assocs.*, 552 U.S. at 587 ("On application for an order confirming the arbitration award, the court "must grant" the order "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of the FAA.") (quoting 9 U.S.C. §§ 9-11).

### 2. The Award Was Uncontested.

No party sought to vacate, modify, or correct the Award in this case. *See* Decision at 13 (CNA "d[id] not dispute the enforceability of the Arbitration Award or contend that it should be vacated, modified, or corrected."). Accordingly, under the FAA, the District Court had to confirm the Award regardless of what it said. *See Hall St. Assocs.,* 552 U.S. at 582.

41

**3.     The District Court Erroneously Relied On *D.H. Blair* When It Decided It Had To Review The Award.**

The District Court was aware of its obligation to confirm the Award. *See* Decision at 4 (acknowledging it "must grant [confirmation] unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of [the FAA].") (quoting 9 U.S.C. § 9.). Nevertheless, the District Court felt empowered to ignore its obligation under the theory that, in the Second Circuit, unopposed motions to confirm arbitration awards are akin to summary judgment motions, meaning that "[e]ven unopposed motions . . . must fail where the undisputed facts fail to show that the moving party is entitled to judgment as a matter of law." Decision at 4-5 (quoting *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006)).

But *D.H. Blair* does not allow district courts to refuse to confirm uncontested arbitration awards. *D.H. Blair* addressed a "Notice of Petition and Petition to Confirm in Part and Vacate in Part an Arbitration Award" (the "Petition") originally filed by a corporation and an individual (collectively, the "Broker"). *Id.* at 100-01. The other parties to the arbitration (collectively, the "Investors") removed the petition to federal court but took no further action, whereupon the district court

42

entered a default, vacated the portion of the award challenged by the Broker, and confirmed the rest. *See id.* at 101-02.

This Court reversed. It held that the district court should have treated the Petition as a summary judgment motion rather than a complaint in default and, therefore, examined the record to determine if the relief the Broker sought—which included vacating the arbitrator's award of prejudgment interest—was supportable. *Id.* at 109-110. Holding that the Broker's request to correct the award was <u>not</u> supportable (because "the Broker failed to inform the arbitrators that prejudgment interest on punitive damages was unavailable"), this Court vacated the "default judgment and the district court's order vacating the arbitration award's provision for prejudgment interest on punitive damages" and held that the award "should have been confirmed in full." *Id.* at 111-113.

The District Court appears to have read *D.H. Blair* as requiring district courts to treat <u>every</u> unopposed motion to confirm as a summary judgment motion, thereby requiring district courts to adjudicate <u>every</u> arbitration award, regardless of whether any party sought adjudication. *See* Decision at 4-5. As set forth above, this interpretation puts *D.H.*

43

*Blair* squarely in conflict with the FAA's text and *Hall St. Assocs.*, both of which require district courts to confirm uncontested arbitration awards. It also "open[s] the door … to a more cumbersome and time-consuming judicial review process" for every arbitration award "and bring[s] arbitration theory to grief in post arbitration process." *Hall St. Assocs.*, 552 U.S. at 588.

That aside, the District Court's interpretation should not be followed for the additional reason that this is <u>not</u> what *D.H. Blair* holds. *D.H. Blair*'s actual holding is that "generally a district court should treat an unanswered removed **petition to confirm/vacate** as an unopposed motion for summary judgment." *Id.*, 462 F.3d at 110 (emphasis added). If one assumes the phrase "petition to confirm/vacate" describes petitions like the one in *D.H. Blair*, i.e., petitions seeking to vacate a portion of an award <u>and</u> confirm the balance, then *D.H. Blair* is consistent with both the FAA and *Hall St. Assocs.*, as it requires district courts to apply summary judgment review standards to arbitration awards only when someone wants to vacate, correct, or modify them. *See, e.g.,* 9 U.S.C. §§ 10-11.

44

Billie will likely argue that the phrase "petition to confirm/vacate" in *D.H. Blair* should instead be read to mean petitions to confirm <u>or</u> vacate awards, meaning district courts can refuse to confirm arbitration awards even when no one asks that they do so. But this reading cannot be squared with the FAA's mandate that district courts "'must grant'" a petition to confirm an arbitration award "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of the FAA." *Hall St. Assocs.*, 552 U.S. at 587 (quoting 9 U.S.C. § 9). As the Supreme Court went on to explain, "[t]here is nothing malleable about 'must grant,' which unequivocally tells courts to grant confirmation in all cases, except when one of the 'prescribed' exceptions applies." *Id.*; *see also Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 1000 (9th Cir. 2003) ("because Congress has specified standards for confirming an arbitration award, federal courts must act pursuant to those standards and no others").

In the end, no exception to the FAA's confirmation requirement applies here. Accordingly, if the District Court had jurisdiction, it had no choice but to confirm the Award.

45

### C.    The Arbitration Documents Are Either Not Judicial Documents, Or They Are Subject To A Minimal Presumption Of Public Access.

A "judicial document … is a filed item that is 'relevant to the performance of the judicial function and useful in the judicial process.'" *Bernstein*, 814 F.3d at 139 (quoting *Lugosch,* 435 F.3d at 119). "A document is ... relevant to the performance of the judicial function if it would reasonably have the tendency to influence a district court's ruling on a motion or in the exercise of its supervisory powers, without regard to which way the court ultimately rules or whether the document ultimately in fact influences the court's decision." *Brown*, 929 F.3d at 49 (internal quotation marks omitted).

Although this definition extends to documents "the judge *should*[] have considered or relied upon … but did not," *id*. at 140 n.3 (quoting *Lugosch,* 435 F.3d at 123, emphasis in original), it does not extend to documents that a court should <u>not</u> have considered, but did anyway, *see United States v. HSBC Bank USA, N.A.*, 863 F.3d 125, 136–37 (2d Cir. 2017). As discussed above, the District Court should not have considered the Arbitration Documents, because their contents were irrelevant to the

46

confirmation process. The Arbitration Documents are not, therefore, judicial documents.

*HSBC Bank*, which also involved a decision to unseal a document that a district court ought not to have considered, confirms this outcome. *HSBC Bank* involved the propriety of a district court's decision to unseal a deferred prosecution agreement ("DPA") between the United States and a pair of defendant entities (collectively, "HSBC"). *See id.* at 128-29. After the parties filed the DPA with the district court in conjunction with a request for a speedy trial waiver, "[t]he district court asked the parties to put in submissions explaining why the court should accept the DPA." *Id.* at 131. The district court did so because it "was operating under the misconception that the DPA was really a plea agreement in the form of an 11C1A charge bargain, and that the United States Sentencing Guidelines therefore instructed it to consider whether the charges adequately reflected the seriousness of the actual offense behavior and whether accepting the agreement would undermine the statutory purposes of sentencing or the sentencing guidelines." *Id.* (internal quotes, record cites, and brackets omitted). After further proceedings, "[h]aving determined that it had supervisory power over the DPA, the

47

district court 'approve[d] the DPA ... subject to [the court's] continued monitoring of its execution and implementation.'" *Id.* at 132 (internal quotes omitted, brackets in original).

At the district court's direction, the government filed "quarterly reports with the Court to keep it apprised of all significant developments in the implementation of the DPA." *Id.* (internal quotes omitted). One report (the "Monitor's Report") contained sensitive findings, and the government filed it under seal. *Id.*

A member of the public subsequently sought a copy of the Monitor's Report on the grounds that it "might be relevant to a complaint he had filed against HSBC with the Consumer Financial Protection Bureau." *Id.* at 132. The district court ordered it unsealed over the parties' objection. *Id.* at 133. As grounds for its order, the district court held the Monitor's Report was a judicial document because, among other reasons not relevant here, the report was "relevant to its supervisory power" over the DPA. *Id.* at 133.

This Court reversed. *Id.* at 142. It held that the district court lacked the power to supervise the DPA in the first place and, absent that power, "the Monitor's Report cannot be deemed 'relevant to the

48

performance of the judicial function….'" *Id.* at 136-37 (quoting *Lugosch*, 435 F.3d at 119). The Monitor's Report was not, therefore, "'a judicial document,' and the district court erred in ordering it unsealed." *Id.* at 129.

The same logic applies here. In this case, the District Court held the Arbitration Documents were judicial documents because it erroneously believed it could *sua sponte* adjudicate the Award's propriety. Decision at 14-15. As discussed above, this was an error because no one sought to vacate, correct, or modify the Award, meaning that the District Court <u>had</u> to confirm it pursuant to the FAA. *See Hall St. Assocs.*, 552 U.S. at 587. As neither Arbitration Document <u>should</u> have played a role in the confirmation process, neither was "relevant to the performance of the judicial function…." *HSBC Bank,* 863 F.3d at 137 (quoting *Lugosch*, 435 F.3d at 119). Accordingly, the Arbitration Documents were not judicial documents, "and the [D]istrict [C]ourt erred in ordering [them] unsealed." *Id.* at 129.; *see also In re IBM Arb. Agreement Litig.,* No. 21-CV-6296 (JMF), 2022 WL 3043220, at \*2 (S.D.N.Y. Aug. 2, 2022) (holding summary judgment materials were not judicial documents because court resolved case on motion to dismiss and therefore "could not

have considered" them); *W. Coast Life Ins. Co. v. Swiss Re Life & Health Am. Inc.*, No. 21 CV 5317 (VB), 2021 U.S. Dist. LEXIS 120043, at *3 (S.D.N.Y. June 28, 2021) ("[B]ecause the parties jointly request that the Court confirm the final award, the final award itself does not directly affect the Court's adjudication of that petition. Thus, the final award is not a judicial document subject to a presumption of access.") (internal quotes and citations omitted); *Citigroup, Inc. v. Abu Dhabi Inv. Auth.*, No. 13 Civ. 6073 (PKC), 2013 WL 6171315, at *7 (S.D.N.Y. Nov. 25, 2013), aff'd, 776 F.3d 126 (2d Cir. 2015) (granting permission to seal documents that "played no role in [the] Court's adjudication of the parties' respective motions, which turned almost entirely on the Investment Agreement's arbitration clause").[13]

---

[13] The Decision cites several other district court opinions for the proposition that all arbitration awards submitted for confirmation are judicial documents. See Decision at 14-15. The logic of these opinions is that arbitration awards must be judicial documents because district courts are "required to consider . . . the arbitration award in determining whether it should be confirmed." Decision at 14-15 (quoting *Bristol-Myers Squibb Co. v. Novartis Pharma AG*, 2022 WL 2133826, at *3 (S.D.N.Y. June 14, 2022)). As previously discussed, this logic is wrong because a district court must confirm an uncontested award. *See supra* Part III(B).

Finally, even if the Arbitration Documents could be judicial documents, the presumption of access that would apply to them would have minimal weight. Where "documents play only a negligible role in the performance of Article III duties, the weight of the presumption is low and amounts to little more than a prediction of public access absent a countervailing reason." *Lugosch*, 435 F.3d at 121 (quoting *Amodeo*, 71 F.3d at 1050). It is hard to imagine a filing with a less consequential role in the performance of Article III duties than an uncontested arbitration award whose contents a district court must ignore. *See, e.g.,* 9 U.S.C. § 9 (uncontested awards "must" be confirmed).

### D. The Right To Arbitral Confidentiality Outweighs Whatever Presumption Of Access Applies To The Award.

At its core, private arbitration is a form of settlement encouraged by federal policy. *See, e.g.*, *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960) (discussing "congressional policy in favor of settlement of disputes by the parties through the machinery of arbitration"). In the ADR context, "honoring the parties' express wish for confidentiality may facilitate settlement, which courts are bound to encourage." *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 143 (2d Cir.

51

2004). For this reason, "protecting confidentiality agreements, such as the one between [Billie] and [CNA], promotes federal policy and encourages ADR by ensuring that parties in an arbitration proceeding get the protections for which they contracted." *Fireman's Fund Ins. Co. v. Cunningham Lindsey Claims Mgmt., Inc.*, No. 03CV0531(DLI)(MLO), 2005 WL 1522783, at *3 (E.D.N.Y. June 28, 2005); *see also Those Certain Underwriters at Lloyds, London v. Occidental Gems, Inc.*, 41 A.D.3d 362, 365, 841 N.Y.S.2d 225, 227 (2007), *aff'd*, 11 N.Y.3d 843, 901 N.E.2d 732 (2008) (noting "the important public interest in protecting the rights of parties who submit to confidential arbitration").

This case makes *Fireman Fund's* point. Without discussing the Award's content, Billie's motion papers demonstrate that the arbitrator made the non-sensical determination that Billie was a Connecticut employee of CNA even though he lives in North Carolina and his son (who does live in Connecticut) performs the work for Billie's franchise. *See* JA366]. Likewise, in concluding that "deductions taken from Billie's monthly pay for insurance and for franchise fees and finder's fees ... were unlawful," Decision at 10 (quoting affidavit characterizing Summary Judgment Order), the arbitrator disregarded a decision by this Court

52

holding that "[a]t least three principles of well-established Connecticut law preclude this unjust enrichment theory." *Mujo v. Jani-King Int'l, Inc.*, 13 F.4th 204, 213 (2d Cir. 2021); *see also id.* at 214 ("[A]n employee-franchisee may enter into a compensation agreement that defines her compensation as the portion of the gross revenue attributable to the employee-franchisee's work after franchise fees are subtracted. As we have explained in this Opinion, a compensation agreement with that structure does not violate the Connecticut Minimum Wage Act and is not void as against public policy.").

These errors, at least arguably, warrant vacating the Award. *See New York Tel. Co. v. Commc'ns Workers of Am. Loc. 1100, AFL-CIO Dist. One*, 256 F.3d 89, 92–93 (2d Cir. 2001) (arbitrator's disregard of controlling precedent was manifest disregard of the law justifying vacating award). Nevertheless, CNA chose not to contest the Award because it was private, *see* JA301, and paying was more efficient than publicly contesting its merits.

If, on the other hand, arbitration awards cannot be kept private and "parties in an arbitration proceeding [cannot] get the protections for which they contracted," *Fireman's Fund*, 2005 WL 1522783, at *3, then

CNA and every other party that receives an unfavorable award in the thousands of private arbitrations that take place each year will have both an increased incentive to contest those awards in court and a diminished incentive to shunt their disputes into private arbitrations in the first place. *Cf. In re Teligent, Inc.*, 640 F.3d 53, 59–60 (2d Cir. 2011) ("Were courts to cavalierly set aside confidentiality restrictions on disclosure of communications made in the context of mediation, parties might … limit their use of mediation altogether."). This is exactly what this Court warned of when it held that attacks on arbitral confidentiality amount to "attack[s] on the character of arbitration itself." *Guyden*, 544 F.3d at 385 (quoting *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 175 (5th Cir. 2004)).

This Court has held that the expectations of privacy adhering to confidential settlements outweigh weak presumptions of public access. *See Gambale*, 377 F.3d at 143-44 & n.8. The same logic applies here—as *Fireman's Fund* explains, "[w]hile [*Gambale*] dealt with settlement agreements, [its] reasoning is equally applicable to the arbitration setting. Both situations deal with a type of judicially encouraged ADR in which confidentiality was contracted for and

54

expected." *Id.*, 2005 WL 1522783, at *4. *See also Barkley v. Pizza Hut of Am., Inc.*, No. 614CV376ORL37DAB, 2015 WL 5915817, at *2 (M.D. Fla. Oct. 8, 2015) ("Courts tend to honor parties' decisions to enter into confidential arbitration [and] keep those proceedings, including awards, confidential, particularly because: (1) parties often enter into them to maintain confidentiality; and (2) it promotes the voluntary execution of private arbitration agreements–a sound public policy objective."); *Original Appalachian Artworks, Inc. v. Jakks Pac., Inc.*, No. 1:14-CV-02861-ELR, 2017 WL 5476798, at *4 (N.D. Ga. Mar. 6), *aff'd*, 718 F. App'x 776 (11th Cir. 2017) (same).

The District Court's contrary decision—premised on "the court's reliance upon [the Arbitration Documents] in adjudicating the Motion to Confirm Arbitration Award," Decision at 15—was error. Although arbitral confidentiality may give way when a party asks a court to vacate, modify, or correct an arbitration award, that rationale disappears where, as here, the award is uncontested and the court has no option but to confirm. If, as the District Court appears to believe, a party can defeat arbitral confidentiality in these circumstances simply by filing a confirmation motion, then the practical value of arbitral confidentiality

evaporates. And the efficiency that confidentiality generates by encouraging parties to privately resolve disputes evaporates with it.

The District Court also made two subsidiary errors. First, it held that parties to arbitrations confirmable in federal court have no "legitimate expectation of privacy in all papers pertaining to the arbitration because the party should know of the presumption of public access to judicial proceedings." Decision at 16 (quoting *Robert Bosch GmbH v. Honewell Int'l Inc.*, 2015 WL 128154, at *1 (S.D.N.Y. Jan. 6, 2015)). This directly contradicts *Guyden's* holding that "confidentiality is a paradigmatic aspect of arbitration." *Id.*, 544 F.3d at 385. In fact, as *Guyden* recognizes, arbitration is "a type of judicially encouraged ADR in which confidentiality [i]s contracted for and expected." *Fireman's Fund Ins. Co.*, 2005 WL 1522783, at *4.

Second, the District Court ordered the Arbitration Documents unsealed because, in part, they could assist other parties who might sue CNA. Decision at 18. But this is equally true of <u>all</u> ADR documents the law keeps confidential, including settlement offers and mediation records, which this Circuit does not release absent "a special need" and "resulting unfairness" that "outweigh[] the interest in maintaining

56

confidentiality." *In re Teligent, Inc.*, 640 F.3d 53, 58 (2d Cir. 2011) (refusing to unseal mediation communications relevant to malpractice claim). After all, "[c]onfidentiality is an important feature of … alternative dispute resolution processes," and "[p]romising participants confidentiality … protect[s] the integrity of alternative dispute resolution generally." *Id.* at 57-58. The mere possibility that the Arbitration Documents might assist some other litigant—or, more likely, the business generation prospects of Billie's attorney—is not grounds to "cavalierly set aside confidentiality restrictions" inherent in an ADR process Congress supports as a matter of federal policy. *In re Teligent, Inc.*, 640 F.3d at 59. This Court should therefore reverse the District Court's decision to unseal the Arbitration Documents.

## <u>CONCLUSION</u>

For the reasons set forth above, this Court should reverse the Decision and remand this matter to the District Court with orders to dismiss it.

57

DATED: August 4, 2023    By its attorneys,

/s/ Matthew J. Iverson
Matthew J. Iverson (BBO No. 653880)
NELSON MULLINS RILEY &
SCARBOROUGH LLP
One Financial Center
Suite 3500
Boston, MA 02111
(617) 217-4700
matthew.iverson@nelsonmullins.com

Norman M. Leon
DLA PIPER LLP (US)
444 West Lake Street, Suite 900
Chicago, IL 60606
(312) 368-4000
Norman.Leon@dlapiper.com

## **CERTIFICATE OF SERVICE**

I, Matthew J. Iverson, hereby certify that on August 4, 2023, I caused the Appellant's Opening Brief and Appendix to be electronically filed with the Clerk of the Court of Appeals for the Second Circuit using the CM/ECF system and to be served on all counsel of record. I further certify that Volume III of the Joint Appendix, which was submitted under seal, was mailed to the Clerk of the Court and to counsel for Appellee.

*/s/ Matthew J. Iverson*
Matthew J. Iverson

Dated: August 4, 2023

## <u>CERTIFICATION OF COMPLIANCE</u>

With Type-Volume Limitation, Typeface Requirements,
and Type-Style Requirements

The undersigned certifies as follows:

1.    This document complies with the word limit requirement of Federal Rule of Appellate Procedure 32(a)(7)(B) and Local Rule 32.1(a)(4) because it contains 11,628 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2.    This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface of 14 points.

<u>/s/ Matthew J. Iverson</u>
Matthew J. Iverson

Dated: August 4, 2023

# SPECIAL APPENDIX

# <u>Table of Contents – Special Appendix</u>

Dkt No. 85 – Ruling on Motions to Seal to Confirm Arbitration
Award, and to Dismiss for Lack of Subject Matter Jurisdiction
(Docs. No. 70, 73, 79) ............................................................. SPA1

Webster Definition "Enforce" Definition ......................................... SPA19

9 U.S.C. § 9 ....................................................................... SPA20

9 U.S.C. § 10 ...................................................................... SPA21

9 U.S.C. § 11 ...................................................................... SPA23

28 U.S.C. § 1291 .................................................................. SPA24

Conn. Gen. Stat. § 37 3a .......................................................... SPA25

28 U.S.C. § 1332(a) ............................................................... SPA27

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|  |  |  |
|---|---|---|
| CARIBE BILLIE, | : | CIVIL CASE NO. |
| Plaintiff, | : | 3:19-CV-0092 (JCH) |
|  | : |  |
| v. | : |  |
|  | : |  |
| COVERALL NORTH AMERICA, INC., | : | MARCH 30, 2023 |
| Defendants. | : |  |
|  | : |  |

**RULING ON MOTIONS TO SEAL, TO CONFIRM ARBITRATION AWARD, AND TO DISMISS FOR LACK OF JURISDICTION (DOCS. NO. 70, 73, 79)**

### I.     INTRODUCTION

Plaintiff Caribe Billie ("Billie") is moving to seal and to confirm the Arbitration Award he secured against the defendant, commercial cleaning services provider Coverall North America, Inc., ("Coverall"). At the same time, Coverall is cross-moving to dismiss Billie's effort for lack of subject matter jurisdiction.

For the reasons stated below, Coverall's Cross Motion to Dismiss for Lack of Jurisdiction (Doc. No. 79) and Billie's Motions to Seal (Doc. No. 70) are denied, and Billie's Motion to Confirm Arbitration Award (Doc. No. 73) is granted.

SPA1

## II.    BACKGROUND

On January 17, 2019, Billie and another plaintiff filed suit against Coverall alleging that the defendant misclassified the plaintiffs as independent contractors and withheld portions of their wages in violation of Connecticut law.  See Complaint (Doc. No. 1).  In March 2020, however, this court granted Coverall's Motion to Compel Arbitration.  See Billie v. Coverall N. Am., Inc., 444 F. Supp. 3d 332, 355 (D. Conn. 2020).  A final Arbitration Award was entered for Billie in the amount of $57,100,06 on May 27, 2022.  See Motion to Confirm Arbitration Award ("Mot. to Confirm") at 1; Cross Motion to Dismiss for Lack of Jurisdiction and Opposition to the Motions to Seal to Confirm Arbitration Award ("Cross Motion and Opposition") at 4.

On June 7, 2022, Billie moved to confirm the Arbitration Award he secured pursuant to the parties' arbitration agreement as well as the Federal Arbitration Act ("FAA"), sections 9 and 13 of title 9 of the United States Codes.  See Mot. to Confirm at 1; Exhibit 3, Arbitration Agreement ("Arbitration Agmt.") ¶ 21(A)(6) (Doc. No. 73–3) ("The decision of the arbitrator shall be conclusive and binding upon all parties, and judgment upon the award may be entered in any court of competent jurisdiction.").  In accordance with the terms of the arbitration agreement, Billie filed the Arbitration Award as well as the arbitrator's Order on the Motion for Preliminary Summary Judgment as sealed exhibits to the Motion to Confirm Arbitration Award.  See id. at 2.  Nonetheless, in his accompanying Motion to Seal, Billie requests that the court "exercise its inherent authority to unseal this award so that the public may access it."  Id.; Motion to Seal ("Mot. to Seal") at 1–2 (Doc. No. 70).  Coverall, on the other hand, argues that the court lacks subject matter jurisdiction to confirm the Arbitration Award and that Billie's request

to unseal the arbitration decisions should therefore be returned pursuant to Local Rules of Civil Procedure 5(e)(7) and 83.6(a).  See Cross Motion and Opposition at 1–2; Sur-Reply Addressing Amount in Controversy Calculations ("Def.'s Sur-Reply") at 1 (Doc. No. 84).

### III.    LEGAL STANDARD

#### A.    Subject Matter Jurisdiction

Although the FAA authorizes a party to an arbitration agreement to apply to a court to confirm an arbitration award, a federal court still "must have what we have called an 'independent jurisdictional basis' to resolve the matter."  Badgerow v. Walters, 142 S. Ct. 1310, 1314 (2022) (quoting Hall Street Assocs., LLC v. Mattel, Inc., 552 U.S. 576, 582 (2008)).  A federal court generally has subject matter jurisdiction over a civil case if it has either federal question jurisdiction or diversity jurisdiction.  See 28 U.S.C. §§ 1331, 1332(a).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."  Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  In assessing whether federal jurisdiction exists for the purposes of confirming an arbitration award, "a court may look only to the application actually submitted to it" and may not "look through" to the underlying controversy.  Badgerow, 142 S. Ct. 1314.

When the record as a whole—including as supplemented by affidavits to the Court—"establishes the existence of the requisite diversity of citizenship between the parties," the court may "deem the pleadings amended so as to properly allege diversity jurisdiction."  Durant, Nichols, Houston, Hodgson & Cortese-Costa, P.C. v. Dupont, 565 F.3d 56, 64 (2d Cir. 2009) (quotation and citation omitted).

B.    Confirming an Arbitration Award

Section 9 of the FAA provides that, within one year of the issuance of an arbitration award, "any party to the arbitration" may apply for confirmation of that award and the court "must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of [the FAA]."  9 U.S.C. § 9.  Confirmation of an arbitration award is generally "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court."  D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 110 (2d Cir.2006) (quoting Florasynth, Inc. v. Pickholz, 750 F.2d 171, 176 (2d Cir.1984)).  It is well settled that the court's function in confirming an arbitrator's award is "severely limited."  Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp., 103 F.3d 9, 12 (2d Cir.1997) (quoting Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sals Corp., 274 F.2d 805, 808 (2d Cir. 1960).  Indeed, the arbitrator need not explain his or her rationale for an award, and the district court will confirm the award "if a ground for the arbitrator's decision can be inferred from the facts of the case."  D.H. Blair, 462 F.3d at 110 (quoting Barbier v. Shearson Lehman Hutton, Inc., 948 F.2d 117, 121 (2d Cir.1991)).  In fact, "only 'a barely colorable justification for the outcome reached' by the arbitrators is necessary to confirm the award."  Id. (quoting Landy Michaels Realty Corp. v. Local 32B–32J, Service Employees Int'l Union, 954 F.2d 794, 797 (2d Cir.1992)).

In the Second Circuit, unopposed motions to confirm an arbitration award are "evaluated under the legal standards applicable to a motion for summary judgment."  Dirs. Guild of Am., Inc. v. NBC, 2022 WL 2129052, at *2 (S.D.N.Y. June 14, 2022) (citing D.H. Blair, 462 F.3d at 109–10).  Therefore, prevailing on an unopposed motion requires that the movant show "that there is no genuine dispute as to any material fact

4

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All facts must be viewed "in the light most favorable" to the non-moving party. Tolan v. Cotton, 572 U.S. 650, 657 (2014) (citations omitted). As with a motion for summary judgment, "[e]ven unopposed motions . . . must fail where the undisputed facts fail to show that the moving party is entitled to judgment as a matter of law." D.H. Blair, 462 F.3d at 110 (quotation and citation omitted).

    C.    Sealing the Arbitration Award

A presumption of public access attaches to anything deemed a "judicial document," which is a "filed item that is 'relevant to the performance of the judicial function and useful in the judicial process.'" Bernstein v. Bernstein Litowitz Berger & Grossmann LLP, 814 F.3d 132, 139 (2d Cir. 2016) (quoting Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119 (2d Cir. 2006)). The presumption is "at its strongest" when "the information at issue forms the basis of the court's adjudication. . . ." Liberty Re (Bermuda) Ltd. v. Transamerica Occidental Life Ins. Co., 2005 WL 1216292, at *6 (S.D.N.Y. May 23, 2005) (citing United States v. Amodeo, 71 F.3d 1044, 1049 (2d Cir.1995). Even when "the Court did not rely on" the documents, the presumption remains strong if they were "brought to the Court's attention in connection with a contested matter." Accent Delight Int'l Ltd. v. Sotheby's, 394 F. Supp. 3d 399, 417 (S.D.N.Y. 2019) (citing Lugosch, 435 F.3d at 121). Where documents "play only a negligible role in the performance of the court's Article III duties, the weight of the presumption is low and amounts to little more than a prediction of public access absent a countervailing reason." Lugosch, 435 at 121.

"[A]fter determining the weight of the presumption of access, the court must balance competing considerations against it by considering countervailing factors

includ[ing] but . . . not limited to the danger of impairing law enforcement or judicial efficiency and the privacy interests of those resisting disclosure."  <u>Union Square Ltd. v. Bar-B-Q Prods. LLC</u>, 2022 WL 252080, at *3 (S.D.N.Y. Jan. 27, 2022) (quotation and citation omitted).  "The party seeking to maintain the seal carries the burden of demonstrating the need to seal."  <u>Park Ave. Life Ins. Co. v. Allianz Life Ins. Co. of N. Am.</u>, 2019 WL 4688705, at *2 (S.D.N.Y. Sept. 25, 2019) (citing <u>DiRussa v. Dean Witter Reynolds Inc.</u>, 121 F.3d 818, 826 (2d Cir. 1997)).

Even in instances where the public right of access attaches, "documents may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest."  <u>Lugosch</u>, 435 at 120 (quotation and citation omitted).  "Courts in the Second Circuit routinely hold that such 'higher values' include protecting from disclosure proprietary, sensitive, and confidential business information."  <u>Markowitz v. KBI Servs.</u>, 2021 WL 4555833, at *2 (S.D.N.Y. Oct. 5, 2021) (collecting cases).  However, the Second Circuit is clear that "the mere existence of a confidentiality order" does not overcome "the presumption of access" absent other "specific, on-the-record findings."  <u>Lugosch</u>, 435 F.3d at 126; <u>see also</u> <u>Park Ave. Life Ins. Co.</u>, 2019 WL 4688705, at *3 ("[T]he mere existence of a confidentiality agreement . . . is insufficient to overcome the First Amendment presumption of access." (quotation and citation omitted)).

IV.   **Discussion**

A.   <u>Subject Matter Jurisdiction</u>

In moving to dismiss, Coverall argues that this court lacks jurisdiction to confirm the Arbitration Award.  <u>See</u> Cross Motion and Opposition at 1–5; Def.'s Sur-Reply at 1. In particular, Coverall avers that the amount in controversy is insufficient for diversity

6

jurisdiction and that there is no live controversy because the defendant has already paid the Arbitration Award.  <u>See</u> Cross Motion and Opposition at 1.  Billie counters that the court has diversity jurisdiction, and that the amount in controversy is established when factoring in the Arbitration Award, attorney's fees for the instant litigation, and the value of the declaratory relief in the Arbitration Award.  <u>See</u> Pl.'s Reply at 1–2.  Additionally, Billie maintains that Coverall's compliance with the Arbitration Award does not render Billie's Motion moot.  <u>See id.</u>

Diversity jurisdiction under section 1332 first requires that no plaintiff is a citizen of the same state as any defendant.  <u>See</u> <u>St. Paul Fire & Marine Ins. Co. v. Universal Builders Supply</u>, 409 F.3d 73, 80 (2d Cir. 2005) ("Diversity is not complete if any plaintiff is a citizen of the same state as any defendant.").  Here, Billie avers that he was domiciled in Connecticut at the time of the suit.  <u>See</u> Pl.'s Reply at 6; <u>Van Buskirk v. United Grp. of Cos., Inc.</u>, 935 F.3d 49, 53 (2d Cir. 2019) ("An individual's citizenship, within the meaning of the diversity statute, is determined by his domicile").  Moreover, Billie asserts that Coverall is a Delaware corporation with its principal place of business in Florida.  <u>See</u> Pl.'s Reply at 6; <u>see also</u> 28 U.S.C. § 1332(c)(1) (stating that "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business").  Indeed, Coverall does not dispute that the parties are diverse.  <u>See</u> Cross Motion and Opposition at 4.

Diversity jurisdiction also requires that "the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs."  28 U.S.C. § 1332(a).  The party invoking jurisdiction must prove that the amount in controversy appears to a

SPA7

"reasonable probability" to exceed the statutory jurisdictional amount.  See Scherer v. Equitable Life Assurance Soc'y of U.S., 347 F.3d 394, 397 (2d Cir. 2003).  In the Second Circuit, there is a "rebuttable presumption" that the amount alleged by the party invoking jurisdiction is a "good faith representation of the actual amount in controversy." Id. (quoting Wolde–Meskel v. Vocational Instruction Project Cmty. Servs., Inc., 166 F.3d 59, 63 (2d Cir. 1999)).  To overcome this rebuttable presumption, the party disputing jurisdiction must show "'to a legal certainty' that the amount recoverable does not meet the jurisdictional threshold." Id. (citation omitted).  This is a "high bar" because "[t]he legal impossibility of recovery must be so certain as virtually to negative the plaintiff's good faith in asserting the claim."  Id. (quoting Chase Manhattan Bank, N.A. v. Am. Nat. Bank & Trust Co. of Chi., 93 F.3d 1064, 1070–71 (2d Cir. 1996)).  On the other hand, the Second Circuit has also indicated that a merely conclusory allegation that the amount exceeds $75,000 is not sufficient.  See Wood v. Maguire Auto., LLC, 508 F. App'x 65, 65–66 (2d Cir. 2013) ("Wood's allegation in her complaint of $75,000 in controversy is conclusory and not entitled to a presumption of truth.").

In this case, Coverall claims that the amount in controversy is not satisfied because the arbitration award, "including attorneys' fees and the maximum accrued interest under Connecticut law, is $57,100.06."  Cross Motion and Opposition at 4.  Billie responds by arguing that this figure does not represent the full calculation of the amount in controversy.  See Pl.'s Reply at 6.

First, Billie argues that amount does not account for attorneys' fees for the instant action.  Id.  The Second Circuit is clear that "[a]ttorney's fees may be used to satisfy the amount in controversy only if they are recoverable as a matter of right pursuant to

statute or contract."  Kimm v. KCC Trading, Inc., 449 F. App'x 85, 85–86 (2d Cir. 2012)
(citing Givens v. W.T. Grant Co., 457 F.2d 612, 614 (2d Cir. 1972), vacated on other
grounds, 409 U.S. 56 (1972).  Here, Coverall argues that Billie is not entitled to
attorneys' fees for a "confirmation application", see Def.'s Sur-Reply at 4–5, but this
argument is undercut by terms of the arbitration agreement, which specify that "[s]hould
either Party incur attorney's fees in order to enforce the terms and conditions of this
Agreement, including post-term covenants, the prevailing party shall be entitled to
reimbursement by the other party of all litigation costs, including attorney's fees."
Arbitration Agmt. ¶ 21(C).  As such, it is proper to include the cost of attorney's fees in
the calculation of the amount in controversy, as one of the terms and conditions of the
arbitration agreement is that "[t]he decision of the arbitrator shall be conclusive and
binding upon all the parties, and judgment upon the award may be entered in any court
of competent jurisdiction."  See id. ¶ 21(A)(6).  Billie's counsel offered a sworn affidavit
declaring that the firm has already accrued $9,250 in fees in support of the Motion to
Confirm, with that number likely to exceed $12,000 in light of appeals.[1]  See Affidavit of
Adelaide Pagano ("Pagano Aff.") ¶ 6 (Doc. No. 80–1).

Second, Billie argues that the amount in controversy calculation must account for
the declaratory relief included in the Arbitration Award.  See Pl.'s Reply at 7.  Where
declaratory relief is at issue, "the amount in controversy is measured by the value of the
object of the litigation."  Washington Nat'l Ins. Co. v. OBEX Grp. LLC, 958 F.3d 126, 135
(2d Cir. 2020) (quotation and citation omitted).  Thus, "the amount in controversy is not

---

[1] In opposing confirmation of the Arbitration Award, Coverall alludes to their future appeal should the court rule in Billie's favor.  See Cross Motion and Opposition at 1 n.1 ("Second Circuit precedent is to the contrary, but [Coverall] wishes to preserve this argument for appeal.").

necessarily the money judgment sought or recovered, but rather the value of the consequences which may result from the litigation." Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc., 697 F.3d 59, 68 (2d Cir. 2012) (quoting Beacon Const. Co., Inc., v. Matco Elec. Co., Inc., 521 F.2d 392, 399 (2d Cir. 1975).

In the instant case, Billie argues that the value of the consequences of the litigation include the arbitrator's finding that Billie is a Coverall employee. See Pl.'s Reply at 6. The arbitrator's conclusion means that "deductions taken from Billie's monthly pay for insurance and for franchise fees and finder's fees (paid in order to secure additional cleaning work) were unlawful . . . such that these fees would be recoverable by Mr. Billie going forward." Pagano Aff. ¶ 7. In addition, Billie will also be eligible for important benefits, like unemployment insurance. Id. In her sworn affidavit, Billie's counsel estimated the value of these savings and benefits as likely exceeding $12,000. Id.

Coverall disputes this by maintaining that the arbitrator did not award any declaratory relief. See Def.'s Sur-Reply at 2–3. In support of this position, Coverall points to the conclusion of the Arbitration Award, which notes that "any claims not expressly granted are hereby, denied." Id. at 3; Arbitration Award at 2 (Doc. No. 71). As the Award explicitly notes, however, the arbitrator previously granted Billie's Motion for Partial Summary Judgment, ruling that Billie is a Coverall employee and that the independent contractor agreements and releases contravene Connecticut law. Arbitration Award at 1. As Billie rightly posits, this not only entitled Billie to damages for the unlawful deductions taken in the past—as delineated in the Award—but also to the benefits attendant to being an employee going forward. See Pagano Aff. ¶ 7.

Coverall also contests that the value of this relief can be factored into the amount in controversy because Billie "provides no formula and no calculations for the value of the declaratory relief he . . . claims he obtained." Def.'s Sur-Reply at 3. While it is true that there is "a 'reasonable probability' that the jurisdictional amount is met if it 'can be ascertained pursuant to some realistic formula[,]'" Turban v. Bar Giacosa Corp., 2019 WL 3495947, at *2 (S.D.N.Y. Aug. 1, 2019), this "is not an exacting standard." Id. "Where the damages sought are uncertain, the doubt should be resolved in favor of the plaintiff's pleadings." Tongkook Am., Inc. v. Shipton Sportswear Co., 14 F.3d 781, 785 (2d Cir. 1994). Moreover, "the sum claimed by the [plaintiff] controls if the claim is apparently made in good faith." Washington Nat'l Ins. Co, 958 F.3d at 135 (quoting A.F.A Tours, Inc. v. Whitchurch, 937 F.2d 82, 87 (2d Cir. 1991)). As the court already noted, it is up to the party opposing jurisdiction to show "'to a legal certainty' that the amount recoverable does not meet the jurisdictional threshold." Scherer, 347 F.3d at 397 (quotation and citation omitted). Indeed, "the legal impossibility of recovery must be so certain as virtually to negative the plaintiff's good faith in asserting the claim." Id. (quotation and citation omitted).

Here, the value of the relief is uncertain, but Billie offered a signed affidavit explaining the foundation of the calculation. See Pagano Aff. ¶ 7. Flowing to Billie will now be the amount Coverall previously deducted from his monthly pay for insurance as well as finder's and franchise fees, in addition to benefits like unemployment insurance. Id. As such, Billie's claim that the value of the declaratory relief likely exceeds $12,000 is not merely a bare, conclusory statement that is not entitled to a presumption of truth,

but a good faith estimate rooted in specific context.  Additionally, there is no legal

impossibility of recovery such that Billie's good faith is negated.

Accordingly, the amount in controversy includes the $57,100.06 Award as well as

the $12,000 flowing from the arbitrator's finding that Billie is a Coverall employee.  With

attorneys' fees—which have already amounted to $9,250 and are estimated to exceed

$12,000—the amount in controversy appears to a "reasonable probability" to exceed the

statutory jurisdictional amount.  See Scherer, 347 F.3d at 397.  Moreover, Coverall has

not shown to a "legal certainty" that the claim is for less than the statutory jurisdictional

amount.  Id.  Therefore, dismissal for lack of subject matter jurisdiction is not warranted

on this basis.

Coverall also contends that the Court should dismiss Billie's Motion to Confirm as

there is no live controversy in the wake of the defendant's payment of the Arbitration

Award.  See Cross Motion and Opposition at 1 n.1.  In support of this position, Coverall

cites First Circuit caselaw noting that confirmation of an arbitration award that is not in

dispute "will merely give the parties something more to argue about.  Under the

circumstances, Article III's prudential values and concerns of judicial economy strongly

counsel against the entry of a confirmatory order."  Id.; Derwin v. Gen. Dynamics Corp.,

719 F.2d 484, 492 (1st Cir. 1983).  As Coverall readily concedes, however, Second

Circuit precedent is to the contrary.  See Cross Motion and Opposition at 1 n.1 (noting

Coverall's desire "to preserve this argument for appeal."[2]); Zeiler v. Deitsch, 500 F.3d

157, 169 (2d Cir. 2007) (rejecting the contention that "prior compliance [with the award]

_____

[2] This position was recently asserted in briefings for the Second Circuit, see IBM's Opening Brief at 15–29, Stafford v. IBM, 22-1240, but oral argument has not yet occurred in that case.

SPA12

should serve as a ground for refusal to confirm an arbitration award."). Moreover, the future ramifications of the declaratory relief in the arbitrator's decision suggest that the dispute is not moot and weigh in favor of "giv[ing] the award the force of a court order." Zeiler, 500 F.3d at 169. Consequently, Coverall's payment does not deprive this court of jurisdiction to confirm the Arbitration Award.

Therefore, the court concludes that it has subject matter jurisdiction over the Motions to Seal and to Confirm Arbitration Award, and Coverall's Cross Motion to Dismiss for Lack of Jurisdiction is denied.

B.    Arbitration Award Confirmed

Coverall does not dispute the enforceability of the Arbitration Award or contend that it should be vacated, modified, or corrected. See, e.g., Cross Motion and Opposition at 7 ("While it had ample grounds to do so, [Coverall] is not contesting the Award's enforceability – indeed, it has already paid it."). And, after reviewing the Arbitration Award and conducting the very limited review appropriate in such circumstances, the court determines that confirmation is appropriate. There are no genuine issues of material fact in dispute. Moreover, the arbitrator acted within the scope of the authority granted him by the governing arbitration agreement, and grounds for the arbitrator's decision can clearly be inferred from the facts. D.H. Blair, 462 F.3d at 110. From the text of the Arbitrator's Award as well as the Order on the Motion for Partial Summary Judgment, the court concludes that there is, at the very least, a "barely colorable justification for the outcome reached." Id.

Accordingly, the court grants Billie's Motion to Confirm Arbitration Award.

13

C.    <u>Sealing the Arbitration Award</u>

Although Billie filed the Arbitration Award as well as the arbitrator's Order on the Motion for Partial Summary Judgment under seal pursuant to the arbitration agreement, <u>see</u> Arbitration Agmt. ¶ 21(a)(11), his Motion to Seal actually requests that the court exercise its inherent power to unseal these documents, <u>see</u> Mot. to Confirm at 3–5; Mot. to Seal at 1–2. In doing so, Billie asserts that the Arbitration Award and the Order are "judicial documents" to which there is a presumption of public access, and that the confidentiality provision of the arbitration agreement is not enough to overcome the public interest in the document. <u>See</u> Pl.'s Reply at 9–17. Coverall counters that, even if the arbitration decisions are judicial documents, the "public's strong interest in arbitral confidentiality, in combination with [the defendant's] privacy interests, outweighs the limited public interest in access to an arbitration award that has already been paid." Cross Motion and Opposition at 7.

Courts in this Circuit have recognized that "the petition, memoranda, and other supporting documents filed in connection with a petition to confirm an arbitration award (including the Final Award itself) are judicial documents that directly affect the Court's adjudication of that petition." <u>Union Square Ltd.</u>, 2022 WL 252080, at *4 (collecting cases) (quotation and citation omitted); <u>see also, e.g.</u>, <u>Dentons US LLP v. Zhang</u>, 2021 WL 2187289, at *1 (S.D.N.Y. May 28, 2021) ("Petitions to confirm arbitration awards, and their attendant memoranda of law and supporting documents, are judicial documents. . . ." (quotation and citation omitted)). It plainly follows that, where the court is asked to confirm an award, the award itself is "relevant to the performance of the judicial function and useful in the judicial process." <u>Bernstein</u>, 814 F.3d at 139 (quoting <u>Lugosch</u>, 435 F.3d at 119); <u>see also</u> <u>Bristol-Myers Squibb Co. v. Novartis Pharma AG</u>,

2022 WL 2133826, at *3 (S.D.N.Y. June 14, 2022) ("When a party seeks confirmation of an arbitration award by a court, the award becomes a judicial document subject to the presumption of public access because the district court is required to consider . . . the arbitration award in determining whether it should be confirmed." (quotation and citation omitted)). As such, the court determines that the Arbitration Award is a judicial document. Relatedly, the arbitrator's Order on the Motion for Partial Summary Judgment is cited in and used as a basis for the Award. Accordingly, the court concludes that it too is a judicial document given its relevance to and utility in the decision-making process.

Next, there is the issue of the weight of the presumption of public access that attaches. The weight is "governed by the role of the material at issue . . . and the resultant value of such information to those monitoring the federal courts." Lugosch, 435 F.3d at 119 (quotation and citation omitted). Usually, "the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." Id. (quotation and citation omitted). Here, there is a strong presumption of public access to the Arbitrator's Award and the Order on the Motion for Partial Summary Judgment by virtue of the court's reliance upon those documents in adjudicating the Motion to Confirm Arbitration Award. Liberty Re (Bermuda) Ltd., 2005 WL 1216292, at *6; see also Bristol-Myers Squibb Co., 2022 WL 2133826, at *4 (determining that there was a "strong" presumption of public access to the Award where "the entire purpose of the litigation is to confirm the award"). Indeed, because the documents were used by the court to reach its decision, "the public in the usual case has a right to know what the Court has

done." Glob. Reinsurance Corp.-U.S. Branch v. Argonaut Ins. Co., 2008 WL 1805459, at *2 (S.D.N.Y. Apr. 24, 2008).  Still, the court must consider "'countervailing factors' that might overcome the First Amendment and common law right of access." Union Square Ltd., 2022 WL 252080, at *4.

In support of keeping the arbitration decisions sealed, Coverall raises the confidentiality provision of the arbitration agreement between the parties as well as a policy argument concerning the need to safeguard arbitral confidentiality more generally. See Cross Motion and Opposition at 8–10.  However, confidentiality agreements—absent more—are not a sufficient reason for sealing. Dentons US LLP, 2021 WL 2187289, at *1; see also, e.g., Union Square Ltd., 2022 WL 252080, at *4 (collecting cases).  This is informed, in part, by the fact that an entity like Coverall is aware when agreeing to arbitration that an award against it could be enforced in federal court.  See Robert Bosch GmbH v. Honewell Int'l Inc., 2015 WL 128154, at *1 (S.D.N.Y. Jan. 6, 2015) ("A party to an arbitration proceeding that is subject to confirmation proceedings in a federal court cannot have a legitimate expectation of privacy in all papers pertaining to the arbitration because the party should know of the presumption of public access to judicial proceedings.").  Moreover, "the interest in arbitral confidentiality has never been understood to alone be sufficient to overcome the public's right to access judicial documents when otherwise confidential arbitral documents are submitted to a federal court in connection with a request for the Court to enter judgment or issue a dispositive order." Lohnn v. IBM, 2022 WL 36420, at *13 (S.D.N.Y. Jan. 4, 2022) (collecting cases).  In fact, Coverall's policy argument was recently and "emphatically" rejected:

SPA16

> If the prevailing party in arbitration feels compelled to reduce its award to a judgment, its opponent should understand that the proceedings will no longer be secret, no matter what the parties have agreed. Contrary to [the defendant's] argument, this does not undercut the federal policy favoring arbitration, because the federal policy favoring arbitration favors only resort to alternative dispute resolution – not confidentiality agreements attendant thereto. There is no "FAA exception" to the public's right of access to judicial documents, whether that right arises under First Amendment or is "firmly rooted" in the common law. See 9 U.S.C. § 1, et seq. and 9 U.S.C. § 201 et seq. Any argument to the contrary is utterly unpersuasive. . . .

Bristol-Myers Squibb Co., 2022 WL 2133826, at *4.

Here, Coverall also fails to meet its burden to offer any evidence from which the court might make specific findings showing that sealing is essential to preserving "higher values and is narrowly tailored to serve that interest." Lugosch, 435 F.3d at 120. There is no indication that disclosure of the arbitration decisions would "reveal details of an ongoing investigation, pose a risk to witnesses, endanger national security, or reveal trade secrets." Bernstein, 814 F.3d at 143. Nor is there any risk that disclosure would expose "proprietary, sensitive, and confidential business information." Markowitz, 2021 WL 4555833, at *2. Moreover, Coverall proposed no potential redactions to the arbitration documents, see Cross Motion and Opposition at 10, which suggests that the only harms sealing is designed to redress are the confidentiality interests already recognized as insufficient to overcome the presumption of public access.

Additionally, beyond the strong presumption of public access and lack of evidence that sealing is essential to preserving higher values, there is additional public interest in the arbitrator's decisions. As Billie points out, this case implicates the rights of many other workers who have brought misclassification claims against Coverall and its competitors in recent years. Pl.'s Reply at 15 n.5. As such, Billie argues that keeping the arbitration decisions under seal impairs the ability of other similarly situated

individuals to gain the information necessary to build their own case.  Id. at 16 (citing Ting v. AT&T, 319 F.3d 1126, 1152 (9th Cir. 2003)).  For this reason, courts outside this Circuit have recognized that the existence of multiple parallel proceedings weighs in favor of unsealing germane arbitral materials.  See, e.g., Laudig v. IBM, 2022 WL 18232706, at *8 (N.D. Ga. Dec. 16, 2022) ("In instances of collateral litigation on similar issues, disclosure of materials in one case can serve abstract virtues of sunlight as a disinfectant and also address practical considerations of reducing duplicative discovery [to] speed[ ] up what otherwise might be a lengthy process." (quotation and citation omitted)).  Accordingly, the court is persuaded that the public interest in the content of the arbitration decisions also weighs in favor of unsealing.

Thus, the court determines that the Arbitration Award and the Order on the Motion for Preliminary Summary Judgment should be unsealed.

## V.    CONCLUSION

For the foregoing reasons, the court grants the Billie's Motion to Confirm Arbitration Award (Doc. No. 73).  In addition, the court denies Billie's Motion to Seal (Doc No. 70) as well as Coverall's Motion to Dismiss for Lack of Jurisdiction (Doc. No. 79).  The clerk is hereby ordered to unseal the Arbitration Award (Doc. No. 71) and the Order on the Motion for Preliminary Summary Judgment (Doc. No. 74).

**SO ORDERED.**

Dated at New Haven, Connecticut this 30th day of March 2023.


   /s/ Janet C. Hall
Janet C. Hall
United States District Judge

SPA18



# enforce *verb*

en·force  |  in·ˈfȯrs 🔊  |  en-

enforced; enforcing; enforces

Synonyms of *enforce* ›

*transitive verb*

1  : to give force to : STRENGTHEN

2  : to urge with energy

   *enforce* arguments

3  : CONSTRAIN, COMPEL

   *enforce* obedience

4  *obsolete* : to effect or gain by force

5  : to carry out effectively

   *enforce* laws

enforceability  |  in·ˌfȯr·sə·ˈbi·lə·tē 🔊  |  en-  *noun*

enforceable  |  in·ˈfȯr·sə·bəl 🔊  |  en-  *adjective*

enforcement  |  in·ˈfȯrs·mənt 🔊  |  en-  *noun*

## Synonyms

administer          apply          execute

implement

See all Synonyms & Antonyms in Thesaurus ›

## Example Sentences

Police will be *enforcing* the parking ban.

the duty of the police is to *enforce* the law

## Recent Examples on the Web

The overlapping agreements created confusion for the judge, who said the lawyers needed to untangle technical issues — including over her role in *enforcing* the gun agreement — before moving forward.
— Claudia Lauer, *Chicago Tribune*, 26 July 2023

When his agency began *enforcing* a rule requiring that mattresses be made from materials that wouldn't ignite from lit cigarettes, manufacturers rebelled.
— Michael S. Rosenwald, *Washington Post*, 26 July 2023

Many were betrayed by the company, or by Musk personally, who comes across as capricious, vituperative, and vindictive and, as one of richest people in the world, able and very willing to *enforce* the silencing of dissent with the threat of ruinous burial in legal action.
— Brett Berk, *Car and Driver*, 26 July 2023

See More ⌄

These examples are programmatically compiled from various online sources to illustrate current usage of the word 'enforce.' Any opinions expressed in the examples do not represent those of Merriam-Webster or its editors. Send us feedback about these examples.

KeyCite Yellow Flag - Negative Treatment
Unconstitutional or PreemptedLimitation Recognized by Hancor, Inc. v. R & R Engineering Products, Inc., D.Puerto Rico, Aug. 02, 2005

United States Code Annotated
   Title 9. Arbitration (Refs & Annos)
      Chapter 1. General Provisions (Refs & Annos)

9 U.S.C.A. § 9

§ 9. Award of arbitrators; confirmation; jurisdiction; procedure

Currentness

If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made. Notice of the application shall be served upon the adverse party, and thereupon the court shall have jurisdiction of such party as though he had appeared generally in the proceeding. If the adverse party is a resident of the district within which the award was made, such service shall be made upon the adverse party or his attorney as prescribed by law for service of notice of motion in an action in the same court. If the adverse party shall be a nonresident, then the notice of the application shall be served by the marshal of any district within which the adverse party may be found in like manner as other process of the court.

**CREDIT(S)**

(July 30, 1947, c. 392, 61 Stat. 672.)

Notes of Decisions (484)

9 U.S.C.A. § 9, 9 USCA § 9
Current through P.L.118-7. Some statute sections may be more current, see credits for details.

End of Document                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

SPA20

United States Code Annotated
 Title 9. Arbitration (Refs & Annos)
  Chapter 1. General Provisions (Refs & Annos)

9 U.S.C.A. § 10

§ 10. Same; vacation; grounds; rehearing

Effective: May 7, 2002

Currentness

**(a)** In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration--

  **(1)** where the award was procured by corruption, fraud, or undue means;

  **(2)** where there was evident partiality or corruption in the arbitrators, or either of them;

  **(3)** where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

  **(4)** where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

**(b)** If an award is vacated and the time within which the agreement required the award to be made has not expired, the court may, in its discretion, direct a rehearing by the arbitrators.

**(c)** The United States district court for the district wherein an award was made that was issued pursuant to section 580 of title 5 may make an order vacating the award upon the application of a person, other than a party to the arbitration, who is adversely affected or aggrieved by the award, if the use of arbitration or the award is clearly inconsistent with the factors set forth in section 572 of title 5.

**CREDIT(S)**

SPA21

§ 10. Same; vacation; grounds; rehearing, 9 USCA § 10

(July 30, 1947, c. 392, 61 Stat. 672; Pub.L. 101-552, § 5, Nov. 15, 1990, 104 Stat. 2745; Pub.L. 102-354, § 5(b)(4), Aug. 26, 1992, 106 Stat. 946; Pub.L. 107-169, § 1, May 7, 2002, 116 Stat. 132.)

Notes of Decisions (1857)

9 U.S.C.A. § 10, 9 USCA § 10
Current through P.L.118-7. Some statute sections may be more current, see credits for details.

**End of Document** © 2023 Thomson Reuters. No claim to original U.S. Government Works.

 © 2023 Thomson Reuters. No claim to original U.S. Government Works.

SPA22

United States Code Annotated
  Title 9. Arbitration (Refs & Annos)
    Chapter 1. General Provisions (Refs & Annos)

9 U.S.C.A. § 11

§ 11. Same; modification or correction; grounds; order

Currentness

In either of the following cases the United States court in and for the district wherein the award was made may make an order modifying or correcting the award upon the application of any party to the arbitration--

**(a)** Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.

**(b)** Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.

**(c)** Where the award is imperfect in matter of form not affecting the merits of the controversy.

The order may modify and correct the award, so as to effect the intent thereof and promote justice between the parties.

**CREDIT(S)**

(July 30, 1947, c. 392, 61 Stat. 673.)

Notes of Decisions (97)

9 U.S.C.A. § 11, 9 USCA § 11
Current through P.L.118-7. Some statute sections may be more current, see credits for details.

**End of Document**                                  © 2023 Thomson Reuters. No claim to original U.S. Government Works.

SPA23

KeyCite Yellow Flag - Negative Treatment
Proposed Legislation

United States Code Annotated
  Title 28. Judiciary and Judicial Procedure (Refs & Annos)
    Part IV. Jurisdiction and Venue (Refs & Annos)
      Chapter 83. Courts of Appeals (Refs & Annos)

28 U.S.C.A. § 1291

§ 1291. Final decisions of district courts

Currentness

The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court. The jurisdiction of the United States Court of Appeals for the Federal Circuit shall be limited to the jurisdiction described in sections 1292(c) and (d) and 1295 of this title.

**CREDIT(S)**

(June 25, 1948, c. 646, 62 Stat. 929; Oct. 31, 1951, c. 655, § 48, 65 Stat. 726; Pub.L. 85-508, § 12(e), July 7, 1958, 72 Stat. 348; Pub.L. 97-164, Title I, § 124, Apr. 2, 1982, 96 Stat. 36.)

Notes of Decisions (3584)

28 U.S.C.A. § 1291, 28 USCA § 1291
Current through P.L.118-7. Some statute sections may be more current, see credits for details.

**End of Document**                                 © 2023 Thomson Reuters. No claim to original U.S. Government Works.

SPA24

Connecticut General Statutes Annotated
  Title 37. Interest
    Chapter 673. Interest (Refs & Annos)

C.G.S.A. § 37-3a

§ 37-3a. Rate recoverable as damages. Rate on debt arising out of hospital services

Effective: October 1, 2018

Currentness

(a) Except as provided in sections 37-3b, 37-3c and 52-192a, interest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions or arbitration proceedings under chapter 909,[1] including actions to recover money loaned at a greater rate, as damages for the detention of money after it becomes payable. Judgment may be given for the recovery of taxes assessed and paid upon the loan, and the insurance upon the estate mortgaged to secure the loan, whenever the borrower has agreed in writing to pay such taxes or insurance or both. Whenever the maker of any contract is a resident of another state or the mortgage security is located in another state, any obligee or holder of such contract, residing in this state, may lawfully recover any agreed rate of interest or damages on such contract until it is fully performed, not exceeding the legal rate of interest in the state where such contract purports to have been made or such mortgage security is located.

(b) In the case of a debt arising out of services provided at a hospital, prejudgment and postjudgment interest shall be no more than five per cent per year. The awarding of interest in such cases is discretionary.

**Credits**

(1972, P.A. 292, § 1, eff. May 24, 1972; 1976, P.A. 76-316, § 1; 1979, P.A. 79-364, § 2; 1981, P.A. 81-315, § 1; 1983, P.A. 83-267, § 1; 1987, P.A. 87-260, § 2; 1992, May Sp.Sess., P.A. 92-11, § 10, eff. June 1, 1992; 2003, P.A. 03-266, § 7; 2018, P.A. 18-94, § 32.)

Notes of Decisions (286)

**Footnotes**

[1]

C.G.S.A. § 52-408 et seq.

C. G. S. A. § 37-3a, CT ST § 37-3a
The statutes and Constitution are current with all enactments of the 2023 Regular Session enrolled and approved by the Governor on or before July 1, 2023 and effective on or before July 1, 2023. Some sections may be more current than others, see credits for details.

SPA25

**§ 37-3a. Rate recoverable as damages. Rate on debt arising out..., CT ST § 37-3a**

End of Document           © 2023 Thomson Reuters. No claim to original U.S. Government Works.

SPA26

§ 1332. Diversity of citizenship; amount in controversy; costs..., 28 USCA § 1332

🚩 KeyCite Yellow Flag - Negative Treatment
Unconstitutional or PreemptedValidity Called into Doubt by Abramson v. Marriott Ownership Resorts, Inc., C.D.Cal., Jan. 04, 2016
🚩 KeyCite Yellow Flag - Negative Treatment
Proposed Legislation

United States Code Annotated
  Title 28. Judiciary and Judicial Procedure (Refs & Annos)
    Part IV. Jurisdiction and Venue (Refs & Annos)
      Chapter 85. District Courts; Jurisdiction (Refs & Annos)

28 U.S.C.A. § 1332

§ 1332. Diversity of citizenship; amount in controversy; costs [Statutory Text & Notes of Decisions subdivisions I to V]

Currentness

<Notes of Decisions for 28 USCA § 1332 are displayed in multiple documents.>

**(a)** The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between--

**(1)** citizens of different States;

**(2)** citizens of a State and citizens or subjects of a foreign state, except that the district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State;

**(3)** citizens of different States and in which citizens or subjects of a foreign state are additional parties; and

**(4)** a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

**(b)** Except when express provision therefor is otherwise made in a statute of the United States, where the plaintiff who files the case originally in the Federal courts is finally adjudged to be entitled to recover less than the sum or value of $75,000, computed without regard to any setoff or counterclaim to which the defendant may be adjudged to be entitled, and exclusive of interest and costs, the district court may deny costs to the plaintiff and, in addition, may impose costs on the plaintiff.

SPA27

**(c)** For the purposes of this section and section 1441 of this title--

**(1)** a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business, except that in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of--

**(A)** every State and foreign state of which the insured is a citizen;

**(B)** every State and foreign state by which the insurer has been incorporated; and

**(C)** the State or foreign state where the insurer has its principal place of business; and

**(2)** the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent, and the legal representative of an infant or incompetent shall be deemed to be a citizen only of the same State as the infant or incompetent.

**(d)(1)** In this subsection--

**(A)** the term "class" means all of the class members in a class action;

**(B)** the term "class action" means any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action;

**(C)** the term "class certification order" means an order issued by a court approving the treatment of some or all aspects of a civil action as a class action; and

**(D)** the term "class members" means the persons (named or unnamed) who fall within the definition of the proposed or certified class in a class action.

**(2)** The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which--

SPA28

**(A)** any member of a class of plaintiffs is a citizen of a State different from any defendant;

**(B)** any member of a class of plaintiffs is a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a State; or

**(C)** any member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or a citizen or subject of a foreign state.

**(3)** A district court may, in the interests of justice and looking at the totality of the circumstances, decline to exercise jurisdiction under paragraph (2) over a class action in which greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed based on consideration of--

**(A)** whether the claims asserted involve matters of national or interstate interest;

**(B)** whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States;

**(C)** whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction;

**(D)** whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants;

**(E)** whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States; and

**(F)** whether, during the 3-year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed.

**(4)** A district court shall decline to exercise jurisdiction under paragraph (2)--

SPA29

**(A)(i)** over a class action in which--

**(I)** greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;

**(II)** at least 1 defendant is a defendant--

**(aa)** from whom significant relief is sought by members of the plaintiff class;

**(bb)** whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and

**(cc)** who is a citizen of the State in which the action was originally filed; and

**(III)** principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and

**(ii)** during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons; or

**(B)** two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed.

**(5)** Paragraphs (2) through (4) shall not apply to any class action in which--

**(A)** the primary defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief; or

**(B)** the number of members of all proposed plaintiff classes in the aggregate is less than 100.

**(6)** In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.

**(7)** Citizenship of the members of the proposed plaintiff classes shall be determined for purposes of paragraphs (2) through (6) as of the date of filing of the complaint or amended complaint, or, if the case stated by the initial pleading is not subject to Federal jurisdiction, as of the date of service by plaintiffs of an amended pleading, motion, or other paper, indicating the existence of Federal jurisdiction.

**(8)** This subsection shall apply to any class action before or after the entry of a class certification order by the court with respect to that action.

**(9)** Paragraph (2) shall not apply to any class action that solely involves a claim--

**(A)** concerning a covered security as defined under 16(f)(3)[1] of the Securities Act of 1933 (15 U.S.C. 78p(f)(3)[2]) and section 28(f)(5)(E) of the Securities Exchange Act of 1934 (15 U.S.C. 78bb(f)(5)(E));

**(B)** that relates to the internal affairs or governance of a corporation or other form of business enterprise and that arises under or by virtue of the laws of the State in which such corporation or business enterprise is incorporated or organized; or

**(C)** that relates to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security (as defined under section 2(a)(1) of the Securities Act of 1933 (15 U.S.C. 77b(a)(1)) and the regulations issued thereunder).

**(10)** For purposes of this subsection and section 1453, an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized.

**(11)(A)** For purposes of this subsection and section 1453, a mass action shall be deemed to be a class action removable under paragraphs (2) through (10) if it otherwise meets the provisions of those paragraphs.

**(B)(i)** As used in subparagraph (A), the term "mass action" means any civil action (except a civil action within the scope of section 1711(2)) in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact, except that jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under subsection (a).

**(ii)** As used in subparagraph (A), the term "mass action" shall not include any civil action in which--

**(I)** all of the claims in the action arise from an event or occurrence in the State in which the action was filed, and that allegedly resulted in injuries in that State or in States contiguous to that State;

**(II)** the claims are joined upon motion of a defendant;

**(III)** all of the claims in the action are asserted on behalf of the general public (and not on behalf of individual claimants or members of a purported class) pursuant to a State statute specifically authorizing such action; or

**(IV)** the claims have been consolidated or coordinated solely for pretrial proceedings.

**(C)(i)** Any action(s) removed to Federal court pursuant to this subsection shall not thereafter be transferred to any other court pursuant to section 1407, or the rules promulgated thereunder, unless a majority of the plaintiffs in the action request transfer pursuant to section 1407.

**(ii)** This subparagraph will not apply--

**(I)** to cases certified pursuant to rule 23 of the Federal Rules of Civil Procedure; or

**(II)** if plaintiffs propose that the action proceed as a class action pursuant to rule 23 of the Federal Rules of Civil Procedure.

**(D)** The limitations periods on any claims asserted in a mass action that is removed to Federal court pursuant to this subsection shall be deemed tolled during the period that the action is pending in Federal court.

**(e)** The word "States", as used in this section, includes the Territories, the District of Columbia, and the Commonwealth of Puerto Rico.

### CREDIT(S)

(June 25, 1948, c. 646, 62 Stat. 930; July 26, 1956, c. 740, 70 Stat. 658; Pub.L. 85-554, § 2, July 25, 1958, 72 Stat. 415; Pub.L. 88-439, § 1, Aug. 14, 1964, 78 Stat. 445; Pub.L. 94-583, § 3, Oct. 21, 1976, 90 Stat. 2891; Pub.L. 100-702, Title II, §§ 201(a), 202(a), 203(a), Nov. 19, 1988, 102 Stat. 4646; Pub.L. 104-317, Title II, § 205(a), Oct. 19, 1996, 110 Stat. 3850; Pub.L. 109-2, § 4(a), Feb. 18, 2005, 119 Stat. 9; Pub.L. 112-63, Title I, §§ 101, 102, Dec. 7, 2011, 125 Stat. 758.)

SPA32

§ 1332. Diversity of citizenship; amount in controversy; costs..., 28 USCA § 1332

Notes of Decisions (985)

**Footnotes**

1
       So in original. Reference to "16(f)(3)" probably should be preceded by "section".

2
       So in original. Probably should be "77p(f)(3)".

28 U.S.C.A. § 1332, 28 USCA § 1332
Current through P.L.118-7. Some statute sections may be more current, see credits for details.

**End of Document**               © 2023 Thomson Reuters. No claim to original U.S. Government Works.

SPA33